No. 23-12160

# In the United States Court of Appeals for the Eleventh Circuit

———————

HM Florida-Orl, LLC,

*Plaintiff- Appellee*,

v.

Secretary of the Florida Department of Business and Professional Regulation,

*Defendant-Appellant*.

———————

On Appeal from the United States District Court
for the Middle District of Florida
No. 6:23-cv-00950-GAP-LHP

———————

## Brief Of Amicus Curiae America First Legal Foundation In Support Of The Defendant-Appellant

———————

Gene P. Hamilton
Vice President & General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

### Certificate of Interested Persons And Corporate Disclosure Statement

Counsel of record certifies that the following persons and entities, in addition to those already listed in the parties' briefs, have an interest in the outcome of this case:

| Amicus Curiae | Counsel for Amicus Curiae |
|---|---|
| • America First Legal Foundation | Jonathan F. Mitchell<br>Gene P. Hamilton |

America First Legal Foundation is a not-for-profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have parent corporation, and no publicly held company has a 10 percent or greater ownership interest.


 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
*Counsel for Amicus Curiae*

i

# Table of Contents

Certificate of interested persons and corporate disclosure statement ......................i

Table of contents .................................................................................... ii

Table of authorities ................................................................................ iii

Interest of amici curiae ............................................................................ 1

Statement of compliance with Rule 29 ........................................................ 1

Summary of argument .............................................................................. 1

Argument ............................................................................................... 3

    I.    The plaintiff failed to make a "clear showing" that its injuries are "fairly traceable" to allegedly unlawful conduct of Secretary Griffin ....................................................................................... 3

    II.    The Court should address the merits even if it concludes that the plaintiff failed to make a "clear showing" of Article III standing ............................................................................... 10

    III.    The district court's overbreadth remedy was improper when as-applied relief would fully redress the plaintiff's alleged injury ........... 11

    IV.    Hamburger Mary's must prove a "lopsided ratio" when comparing the unconstitutional and constitutional applications of SB 1423 ................................................................................ 13

    V.    If the preliminary injunction is vacated, it will not immunize those who violated SB 1423 while the preliminary injunction was in effect ...................................................................... 14

Conclusion ........................................................................................... 17

Certificate of compliance ....................................................................... 18

Certificate of service ............................................................................. 19

# Table of Authorities

## Cases

*ACLU of Florida, Inc. v. Miami-Dade County School Board*,
  557 F.3d 1177 (11th Cir. 2009) ...................................................2

*All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*,
  887 F.2d 1535 (11th Cir. 1989) ...................................................2

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ......................................7, 8

*Board of Trustees v. Fox*, 492 U.S. 469 (1989) ............................................11

*Boyle v. Landry*, 401 U.S. 77 (1971) ......................................................8

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ..........................................14

*Califano* v. *Yamasaki*, 442 U. S. 682 (1979) ..........................................13

*California v. Texas*, 141 S. Ct. 2104 (2021) ..............................................4

*Camreta v. Greene*, 563 U.S. 692 (2011) ................................................14

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................................6

*Collins v. Yellen*, 141 S. Ct. 1761 (2021) ..................................................4

*Doe v. Pryor*, 344 F.3d 1282 (11th Cir. 2003) ..........................................8

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ......................................3, 15, 17

*Ex Parte Young*, 209 U.S. 123 (1908) ......................................................2

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ..............................................11

*Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020) .................9, 16

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)....................1, 2

*Munaf v. Green*, 553 U.S. 674 (2008) ......................................................1

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) ....................5, 15

*Pittman v. Cole*, 267 F.3d 1269 (11th Cir. 2001)........................................8

*Poe v. Ullman*, 367 U.S. 497 (1961) ........................................................8

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)..............................10

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................6

*Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998) ............................ 10

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................. 5

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) .................................................... 4

*United States v. Hansen*, 143 S. Ct. 1932 (2023) ........................................... 3, 5, 12, 13

*United States v. Jefferson County*, 720 F.2d 1511 (11th Cir. 1983)............................... 2

*Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980) ........................................................................................ 12

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ............................... 5, 9, 15

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ...................................... 5, 15

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)................................. 2

## Statutes

28 U.S.C. § 1292(a)(1) ............................................................................................ 10

## Other Authorities

Adam Liptak, *Supreme Court Refuses to Revive Florida Law Restricting Drag Shows*, New York Times (November 16, 2023) .......................................... 16

Ann Marimow, *Supreme Court refuses to reinstate Florida's anti-drag show law*, Washington Post (November 16, 2023) ............................................... 16

Thomas W. Merrill, *Judicial Opinions as Binding Law and as Explanations for Judgments*, 15 Cardozo L. Rev. 43 (1993) ................................... 16

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018) ......................................................................................................... 16–17

## Interest Of Amici Curiae

Amicus curiae America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law in the United States and defending individual rights guaranteed under the Constitution and federal statutes. America First Legal has a substantial interest in this case because it firmly believes, as part of its mission to encourage understanding of the law and individual rights guaranteed under the Constitution of the United States, that a proper understanding of those rights must be informed by reference to their text, and any other rights not expressly mentioned must be deeply rooted in this nation's history and tradition. And further, America First Legal believes that a proper understanding of the law in the United States must include a coherent, consistent understanding of the role of federal courts in deciding cases or controversies presented to them.

## Statement Of Compliance With Rule 29

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the amicus curiae, its members, or its counsel financed the preparation or submission of this brief.

## Summary Of Argument

A preliminary injunction is "'an extraordinary and drastic remedy,'"[1] and it may not be granted unless the movant "'clearly establishes the burden

---

1. *Munaf v. Green*, 553 U.S. 674, 689 (2008); *Mazurek v. Armstrong*, 520 U.S. 968, 971, 972 (1997) (per curiam).

of persuasion as to the four requisites.'" *ACLU of Florida, Inc. v. Miami-Dade County School Board*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). The district court did not acknowledge or apply the "clear showing" requirement that the Supreme Court and the Eleventh Circuit consistently impose on litigants who seek preliminary injunctions. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) ("[A] preliminary injunction . . . should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original)); *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008) ("[A] preliminary injunction . . . may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (citing *Mazurek*, 520 U.S. at 972)); *see also Ex parte Young*, 209 U.S. 123, 166 (1908) ("[N]o injunction ought to be granted unless in a case reasonably free from doubt."); *ACLU of Florida*, 557 F.3d at 1198; *All Care Nursing*, 887 F.2d at 1537; *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983) ("The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." (citation omitted).

Hamburger Mary's came nowhere close to making a "clear showing" of likely success on the merits. It did not even allege (let alone show) that it faces a "credible threat of prosecution" from Secretary Griffin; it merely complained about the wording of the statute without ever tying its alleged injuries to the conduct of the defendant that it sued. It did not explain how it could be

entitled to a facial overbreadth remedy when as-applied relief limited to Hamburger Mary's would fully redress the plaintiff's alleged injuries. And it did not show that the ratio of unlawful-to-lawful applications in SB 1423 is sufficiently "lopsided" to trigger application of the overbreadth doctrine, as required by the Supreme Court's recent decision in *United States v. Hansen*, 143 S. Ct. 1932, 1939–40 (2023). The Court should vacate the preliminary injunction and make clear that Secretary Griffin may enforce SB 1423 against any nonparty who violated the statute while the preliminary injunction was in effect. *See Edgar v. MITE Corp.*, 457 U.S. 624, 648–53 (1982) (Stevens, J., concurring in part and concurring in the judgment).

## Argument

### I. The Plaintiff Failed To Make A "Clear Showing" That Its Injuries Are "Fairly Traceable" To Allegedly Unlawful Conduct Of Secretary Griffin

The district court's Article III standing analysis was wrong at every turn, and the Attorney General explains many of its errors. *See* Appellant's Br. at 14–20. But there is a more serious problem with the district court's (and the plaintiff's) approach to standing. Neither the district court (nor the plaintiff) explained how the plaintiff's supposed injuries are "fairly traceable" to the allegedly unlawful *conduct* of Secretary Griffin. Instead, the district court thought that it could establish Article III standing by declaring that the plaintiff's injuries are "fairly traceable" to "the operation of the Act"—rather than the *conduct* of the defendant that it seeks to enjoin. *See* R.30, at 14

("Plaintiff's injury is fairly traceable *to the operation of the Act*" (emphasis added)).

The district court's analysis flouts *California v. Texas*, 141 S. Ct. 2104 (2021), and misunderstands the nature of judicial review. Litigants in federal court do not "challenge" statutes. They challenge the *conduct* of the defendants that they have sued. So a plaintiff must allege and prove an injury that is "fairly traceable" to "allegedly unlawful *conduct*" of the named *defendant*; it is not enough to assert an injury caused by the existence or "operation" of an allegedly unlawful statute. *See California*, 141 S. Ct. at 2113 ("A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("If the plaintiff does not claim to have suffered an injury *that the defendant caused* and the court can remedy, there is no case or controversy for the federal court to resolve." (citation and internal quotation marks omitted)).

The Supreme Court has made this clear time and time again. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), for example, the Court wrote:

> For purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to "allegedly unlawful conduct" of the defendant, *not to the provision of law that is challenged*.

*Id.* at 1779 (emphasis added). And the Supreme Court has repeatedly stated that the federal judiciary cannot issue remedies that operate on a statute; it

can redress only the unlawful *actions* of litigants before the court. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021) ("[N]o court may . . . purport to enjoin challenged laws themselves" (citations and internal quotation marks omitted)); *see also Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute.").

All of this remains true when a plaintiff asserts a First Amendment overbreadth claim, as the rules of Article III standing are constitutionally mandated and cannot be subject to exceptions designed to accommodate the policy considerations that undergird the overbreadth doctrine. *See United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (describing how overbreadth departs from the ordinary rules governing facial challenges and third-party standing, which the Court justifies on the ground that it "provides breathing room for free expression."). So Hamburger Mary's needed to allege and show that its Article III injuries are "fairly traceable" to allegedly unlawful conduct of Secretary Griffin. And in a pre-enforcement lawsuit, that means Hamburger Mary's needs to allege and show a "credible threat of prosecution" from Secretary Griffin—the officer that it is suing and seeking to enjoin. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (allowing pre-enforcement litigation to proceed under Article III only when the plaintiff alleges and proves "'an intention to engage in a course of conduct arguably af-

fected with a constitutional interest, but proscribed by a statute, *and there exists a credible threat of prosecution thereunder*.'" (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (emphasis added)).

The plaintiff's complaint does not allege a "credible threat of prosecution" from Secretary Griffin or anyone else, and it does not even attempt to explain how *any* components of the Article III standing test have been met. *See* R.1, at 1–21 (no discussion or allegations of Article III standing). That alone required dismissal of the complaint, as complaints must "clearly allege facts" that "demonstrate" each element of the Article III standing inquiry. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III standing.]" (citation omitted)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm.").

The complaint also says that Hamburger Mary's has no intent or desire to expose children to obscene or inappropriate performances. R.1, at ¶ 12 ("There is no lewd activity, sexually explicit shows, disorderly conduct, public exposure, obscene exhibition, or anything inappropriate for a child to see."); *id.* at ¶ 48 (insisting that whenever the "entertainment is not suitable for children, children are not allowed to attend and the venue announces this in advance on their website and in their advertising."). So the complaint must explain *how* Hamburger's Mary is facing a "credible threat of prosecution"

under SB 1423—and how those threats are "fairly traceable" to allegedly unlawful conduct of Secretary Griffin—before this lawsuit can proceed past the motion-to-dismiss stage.

And to justify a preliminary injunction, the plaintiff and the district court needed to make a "clear showing"[2] that Hamburger's Mary is facing a "credible threat of prosecution" from Secretary Griffin. *See Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) ("Because a preliminary injunction 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief,' the plaintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction."). Yet the plaintiff's motion for preliminary injunction does not even assert—let alone make a "clear showing"—that it faces a "credible threat of prosecution" from Secretary Griffin or anyone else. Its discussion of standing complains only about the *statute*, rather than the conduct of Secretary Griffin,[3] and it presents no evidence or reason to believe that Secretary Griffin is threatening to enforce SB 1423 against Hamburger Mary's. R.6, at 21 ("The fact that the statutes are both vague and overly-broad indicates that Plaintiff has suffered an actual, concrete, and particularized injury in that it has a reasonable fear of prosecution for conducting shows similar to those it has performed in the past"). But pointing out that a *statute's* language is "vague" or "overbroad" does not show that *state officials* are threatening to enforce that statute against the plaintiff's activi-

---

2.  *See supra* note 1 and accompanying text.
3.  R.6, at 20–21; R.28, at 3–5.

ties—especially when the plaintiff is insisting that it does not allow children to attend performances that are obscene or age-inappropriate. *See Pittman v. Cole*, 267 F.3d 1269, 1283–84 (11th Cir. 2001) ("[F]or a plaintiff alleging that his speech was chilled to have standing, he or she must show "that either (1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution."). And courts routinely dismiss pre-enforcement lawsuits when the plaintiff fails to demonstrate a credible threat of enforcement—even when the statutory language arguably or unquestionably covers the plaintiff's activities. *See, e.g.*, *Boyle v. Landry*, 401 U.S. 77, 80–81 (1971); *Poe v. Ullman*, 367 U.S. 497, 501 (1961); *Doe v. Pryor*, 344 F.3d 1282 (11th Cir. 2003).

The district court's analysis of traceability and redressability is even worse. It relies on the plaintiff's allegations rather than demanding a "clear showing" of Article III standing,[4] which is acceptable for resolving the motion to dismiss but insufficient to support the issuance of a preliminary injunction. *See Barber*, 860 F.3d at 352. The district court never even *claims* that the plaintiff is facing a "credible threat of prosecution" from Secretary Griffin or any other state official, or explains how the plaintiff made a "clear showing" to that effect. R.30 at 10–14. And the district court tries to establish "redressability" by pretending that judicial remedies can formally revoke

---

4.  R.30 at 14 ("Plaintiff has *sufficiently alleged in its Complaint that* the Act . . . at least arguably creates a substantial risk to its licenses due to its vague and overbroad language." (emphasis added)).

8

enacted statutory language. R.30 at 14 ("'[A]s for the redressability prong, *if the challenged rules are stricken as unconstitutional*, [Plaintiff] simply need not contend with them any longer.' Therefore, Plaintiff has Article III standing to pursue its claim." (quoting *Harrell v. The Florida Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010) (emphasis added)). But courts do not "strike" statutes when declaring them unconstitutional; they merely enjoin defendants from enforcing them. *See Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) ("[F]ederal courts have no authority to erase a duly enacted law from the statute books." (citation and internal quotation marks omitted)). The district court needed to explain how an injunction that restrains Secretary Griffin will redress the plaintiff's injuries—and it cannot do that without evidence of a "credible threat of prosecution" from Secretary Griffin.

\* \* \*

The plaintiff and the district court needed to show that *Secretary Griffin* is inflicting Article III injury by credibly threatening prosecution. They do not carry their burden by tracing the plaintiff's Article III injuries to the mere *existence* of the disputed statutory provisions.

## II. The Court Should Address The Merits Even If It Concludes That The Plaintiff Failed To Make A "Clear Showing" Of Article III Standing

If the Court concludes that the plaintiff failed to make a "clear showing" of Article III standing, then it should also consider the merits and reverse the district court on the additional grounds that the statute is not overbroad and that plaintiff was not entitled to a universal remedy. Although federal courts are forbidden to "hypothesize" subject-matter jurisdiction "for the purpose of deciding the merits,"[5] this Court would not violate the ban on hypothetical jurisdiction if it rejects the district court's merits analysis after holding that the plaintiff failed to make a "clear showing" of standing at the preliminary-injunction stage. The jurisdiction of *this* Court to review the preliminary injunction is entirely secure, as it rests on 28 U.S.C. § 1292(a)(1). And the plaintiff's failure to make a "clear showing" of subject-matter jurisdiction at the preliminary-injunction stage does not mean that the federal judiciary conclusively lacks jurisdiction to consider the merits.

There are also compelling reasons for this Court to address the merits, even though it is not required to do so if it concludes that the plaintiff failed to make a "clear showing" of standing. It would further judicial economy for the Court to resolve the substantive and remedial issues now, because a future plaintiff might establish Article III standing with a better developed fac-

---

5. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

tual record. That plaintiff could then ask for a facial or universal remedy, and the issues will be back before this Court even though they have already been briefed and argued in this appeal. This Court should also rule on the merits to provide much needed guidance and assurance to state legislatures who might consider laws similar to SB 1423. It is crucial for legislators within this circuit to know whether these laws are constitutional or, if they are constitutionally problematic, what needs to be done to fix them.

### III. The District Court's Overbreadth Remedy Was Improper When As-Applied Relief Would Fully Redress The Plaintiff's Alleged Injury

Courts should not issue overbreadth remedies when as-applied relief can fully redress the plaintiff's alleged injuries. The Supreme Court so held in *Board of Trustees v. Fox*, 492 U.S. 469 (1989):

> It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied. . . . [F]or reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first.

*Id.* at 485–86. If a litigant asserting an overbreadth claim insists that its speech or conduct is *protected* by the First Amendment, then the Court should award as-applied relief that shields the plaintiff's constitutionally protected activities rather than nixing the statute's enforcement across the board. *See Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) ("[A]s-applied challenges are the basic building blocks of constitutional adjudication." (citation

and internal quotation marks omitted)). Overbreadth remedies should be considered *only* when a litigant's conduct is *unprotected* by the First Amendment, because as-applied relief cannot be used to restrain government officials from enforcing a statute against constitutionally unprotected conduct. *See United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (considering overbreadth claim raised by litigant who conceded that his speech was constitutionally unprotected); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980) (overbreadth doctrine allows "a litigant whose own activities are unprotected" to "nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court.").

The district court never cited *Fox* or acknowledged its existence. But *Fox* makes short work of the plaintiff's overbreadth claim. Hamburger Mary's is not alleging that its performances are unprotected by the First Amendment; to the contrary, it insists that its drag shows are constitutionally protected speech and expression. R.1 at ¶ 39 (criticizing the statute for having "a chilling effect on protected speech"); *id.* at ¶ 42 (same); *id.* at ¶ 50 ("[T]he State seeks to explicitly restrict or chill speech and expression protected by the First Amendment"); R.6 at ¶ 47 (same). The district court agreed and criticized SB 1423 for imposing a "chill" on these supposedly constitutionally protected performances. R.30 at 12. So the district court (at most) should have issued an as-applied remedy that restrains Secretary Griffin from enforcing SB 1423 against Hamburger Mary's. Courts have no business issuing

an "overbreadth" remedy when an as-applied remedy is adequate for the job.
*See Califano* v. *Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief
should be no more burdensome to the defendant than necessary to provide
complete relief *to the plaintiffs*" (emphasis added)).

## IV. Hamburger Mary's Must Prove A "Lopsided Ratio" When Comparing The Unconstitutional And Constitutional Applications Of SB 1423

The Supreme Court's most recent pronouncement on the overbreadth
doctrine requires litigants to prove a "lopsided ratio" when comparing a
law's "unconstitutional applications" to the statute's "lawful sweep":

> Because it destroys some good along with the bad, invalidation
> for overbreadth is strong medicine that is not to be casually em-
> ployed. To justify facial invalidation, a law's unconstitutional
> applications must be realistic, not fanciful, and their number
> must be substantially disproportionate to the statute's lawful
> sweep. *In the absence of a lopsided ratio*, courts must handle un-
> constitutional applications as they usually do—case-by-case.

*United States v. Hansen*, 143 S. Ct. 1932, 1939–40 (2023) (emphasis added)
(citations and internal quotation marks omitted); *see also id.* at 1948 ("[T]he
ratio of unlawful-to-lawful applications is *not lopsided enough* to justify the
'strong medicine' of facial invalidation for overbreadth." (emphasis added)).
Hamburger Mary's failed to make a "clear showing" a "lopsided ratio"
when comparing the supposedly unconstitutional applications of SB 1423
with its legitimate sweep, and the district court made no such finding.

The district court can perhaps be forgiven for ignoring the "lopsided ra-
tio" requirement because *Hansen* was decided on June 23, 2023—only one

day before the district court issued its preliminary injunction on June 24, 2023—and nothing in the docket sheet indicates that the parties brought *Hansen* to the district court's attention. But the district court has no excuse for its failure to demand a showing of "substantial" overbreadth," or for the absence of any finding or determination that the supposedly unconstitutional applications of SB 1423 were "substantial" when "judge[d] in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 616 (1973). Litigants in overbreadth challenges have long been required to make that showing, even before *Hansen*, yet the district court pronounced the statute overbroad without even attempting to compare the allegedly unconstitutional applications of the law with its "plainly legitimate sweep." The Court should make clear to the district court that Hamburger Mary's must demonstrate that a "lopsided ratio" exists if its overbreadth claim gets remanded.

## V. If The Preliminary Injunction Is Vacated, It Will Not Immunize Those Who Violated SB 1423 While The Preliminary Injunction Was In Effect

If this Court vacates or reverses the preliminary injunction, it should make clear that Secretary Griffin (and others) may enforce SB 1423 against anyone who violated the statute while the preliminary injunction was in effect. A federal district court's opinions or injunctions have no precedential effect in other court proceedings,[6] and a *vacated* preliminary injunction pro-

---

6.  *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different

vides no shield to those who chose to violate a statute in reliance on that erroneous and now-repudiated ruling. *See Edgar v. MITE Corp.*, 457 U.S. 624, 651 (1982) (Stevens, J., concurring in part and concurring in the judgment) ("Since a final judgment declaring a state statute unconstitutional would not grant immunity for actions taken in reliance on the court's decision, certainly a preliminary injunction — which on its face does nothing more than temporarily restrain conduct — should not accomplish that result. Neither the preliminary injunction nor the subsequent judgment declaring the statute unconstitutional can fairly be construed as a grant of absolute immunity from enforcement of the Illinois statute.").

A preliminary injunction does not enjoin the disputed statute; it merely tells the enjoined official not to initiate enforcement proceedings while the injunction remains in effect. *See Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Whole Woman's Health II*, 142 S. Ct. at 535 ("[N]o court may . . . purport to enjoin challenged laws themselves" (citations and internal quotation marks omitted)); *Okpalobi*, 244 F.3d at 426 n.34 ("An injunction enjoins a defendant, not a statute."). But that hasn't stopped the media from reporting that the district court's preliminary injunction "blocked" the underlying statute, implying that SB 1423 is formally suspended and that anyone can flout the law without consequence—even if

judicial district, the same judicial district, or even upon the same judge in a different case.").

the preliminary injunction winds up getting vacated on appeal. *See* Adam Liptak, *Supreme Court Refuses to Revive Florida Law Restricting Drag Shows*, New York Times (November 16, 2023), available at https://nyti.ms/3Glewgu (reporting that the district court "issu[ed] a preliminary injunction blocking the law throughout the state"); Ann Marimow, *Supreme Court refuses to reinstate Florida's anti-drag show law*, Washington Post (November 16, 2023), available at https://wapo.st/4a2mAAs (reporting that the district court's preliminary injunction "blocked the law statewide").

SB 1423 remains on the books and continues to exist as the law of Florida. *See Jacobson*, 974 F.3d at 1255 ("[F]ederal courts have no authority to erase a duly enacted law from the statute books." (citation and internal quotation marks omitted)); Thomas W. Merrill, *Judicial Opinions as Binding Law and as Explanations for Judgments*, 15 Cardozo L. Rev. 43, 64 (1993) ("[J]udicial opinions do not result in any change in the codification of enacted law. . . . [S]tatutory provisions that have been declared unconstitutional remain part of the code unless or until repealed by the legislature."). The preliminary injunction is nothing more than a temporary non-enforcement policy imposed on defendant Griffin, which leaves lawbreakers subject to subsequent enforcement action if the judgment is vacated or reversed on appeal. *See id.* ("[I]f a provision is not repealed by the legislature, and the court later changes its mind about the meaning of the Constitution, the provision in question becomes again as fully effective and enforceable in court as if it had never been questioned."); *see also* Jonathan F. Mitchell, *The Writ-of-Erasure*

*Fallacy*, 104 Va. L. Rev. 933, 938–42, 986–1000 (2018). The federal judiciary has no authority to confer preemptive pardons on those who knowingly violate statutes in reliance on court decisions that wrongly declare laws unconstitutional or wrongly enjoin their enforcement. *See Edgar*, 457 U.S. at 653 (Stevens, J., concurring in part and concurring in the judgment) ("There simply is no constitutional or statutory authority that permits a federal judge to grant dispensation from a valid state law.").

## Conclusion

The preliminary injunction should be vacated.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

Gene P. Hamilton
Vice-President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

Dated: December 1, 2023

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 4,206 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

Dated: December 1, 2023

## CERTIFICATE OF SERVICE

I certify that on December 1, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Eleventh Circuit and served through CM/ECF upon all counsel of record in this case.


 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*