No. 23-12160

IN THE

# United States Court of Appeals for the Eleventh Circuit

HM FLORIDA-ORL, LLC
*Plaintiff-Appellee,*

v.

MELANIE GRIFFIN, Secretary, Department of Business
and Professional Regulation, State of Florida,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Middle District of Florida,
District Court Case No. 6:23-cv-00950-GAP-LHP

**BRIEF OF AMICI CURIAE THE AMERICAN CIVIL LIBERTIES UNION
AND THE ACLU FOUNDATION OF FLORIDA
IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMANCE**

Daniel B. Tilley
Florida Bar No. 102882
ACLU FOUNDATION OF FLORIDA
4343 W. Flagler Street, Suite 400
Miami, FL 33134
T. (786) 363-2714
F. (786) 363-1257
DTilley@aclufl.org

Joshua A. Block
Emerson J. Sykes
AMERICAN CIVIL LIBERTIES
 UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
T. (212) 549-2593
F. (212) 549-2650
jblock@aclu.org
esykes@aclu.org

*Counsel for Amici Curiae*

## CERTIFICATE OF INTERESTED PERSONS

In addition to those already listed in the parties' briefs, the following persons

have an interest in the outcome of this case:

1. American Civil Liberties Union

2. ACLU Foundation of Florida

3. Joshua A. Block

4. Emerson J. Sykes

5. Daniel B. Tilley

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Amici curiae the American Civil Liberties Union and the ACLU Foundation of Florida are non-profit entities that do not have parent corporations. No publicly held corporation owns 10 percent or more of any stake or stock in amici curiae.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST PERSONS.............................................................C-1

CORPORATE DISCLOSURE STATEMENT .......................................................C-2

TABLE OF AUTHORITIES ....................................................................................ii

INTEREST OF AMICI CURIAE...............................................................................6

STATEMENT OF COMPLIANCE WITH RULE 29 ...............................................6

SUMMARY OF ARGUMENT ..................................................................................6

ARGUMENT ...............................................................................................................8

I.  Minors Have a First Amendment Right to Attend Drag Performances.............8

II. The Drag Ban's Expansion Beyond the Constitutional Test for Obscenity
    for Minors Is Unconstitutionally Overbroad ....................................................10

    A.  The drag ban extends beyond the constitutional test for obscenity for
        minors to reach protected speech.............................................................12

    B.  The drag ban's prohibition on "lewd" performances is a content-
        based restriction on speech that fails strict scrutiny.................................19

        i.   The government does not have a compelling interest in
             prohibiting minors from attending "lewd" drag performances.......20

        ii.  The drag ban is not narrowly tailored, nor is it the least
             restrictive means available to achieve the government's aim ..........22

III. The Drag Ban's Expansion Beyond the Constitutional Test for Obscenity
     Is Unconstitutionally Vague...........................................................................24

CONCLUSION ........................................................................................................28

CERTIFICATE OF COMPLIANCE ......................................................................30

CERTIFICATE OF SERVICE................................................................................31

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) ....................................................................... 8

*ACLU v. Ashcroft*,
322 F.3d 240 (3d Cir. 2003) ...................................................... 26, 27

*American Booksellers v. Webb*,
919 F.2d 1493 (11th Cir. 1990) ............................................ 11, 12, 26

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ..................................................................... 27

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002) ..................................................................... 19

*Aspen American Insurance Co. v. Landstar Ranger, Inc.*,
65 F.4th 1261 (11th Cir. 2023) ...................................................... 15

*Bailey v. Iles*,
87 F.4th 275 (5th Cir. 2023) .......................................................... 18

*Bethel School District No. 403 v. Fraser*,
478 U.S. 675 (1986) ..................................................................... 17

* *Brown v. Entertainment Merchants Ass'n*,
564 U.S. 786 (2011) ............................................ 9, 10, 12, 19, 23, 25

*Chesebrough v. State*,
255 So. 2d 675 (Fla. 1971) ............................................................ 16

*City of Seattle v. Johnson*,
791 P.2d 266 (Wash. Ct. App. 1990) ............................................... 14

*Cohen v. California*,
403 U.S. 15 (1971) ....................................................................... 14

*Cunningham v. State*,
400 S.E.2d 916 (Ga. 1991) ...................................................... 14, 16

*D.C. v. City of St. Louis*,
795 F.2d 652 (8th Cir. 1986) .......................................................... 14

* *Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) .................................................. 6, 9, 10, 14, 21

ii

*Ex parte Lo*,
424 S.W.3d 10 (Tex. Crim. App. 2013)..........................................................20, 22

*Ex parte Lowry*,
639 S.W.3d 151 (Tex. Ct. App. 2021) ...............................................................16

*FCC v. Pacifica Foundation*,
438 U.S. 726 (1978) ..........................................................................................21

*Federal Amusement Co. v. State ex rel. Tuppen*,
32 So. 2d 1 (Fla. 1947) .....................................................................................28

*FF Cosmetics FL, Inc. v. City of Miami Beach*,
866 F.3d 1290 (11th Cir. 2017)........................................................................11

\* *Ginsberg v. New York*,
390 U.S. 629 (1968) ..........................................................................................12

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ....................................................................................24, 27

*Hill v. Colorado*,
530 U.S. 703 (2000) ..........................................................................................24

*Larimore v. State*,
2 So. 3d 101 (Fla. 2008)....................................................................................15

\* *Miller v. California*,
413 U.S. 15 (1973) ..............................................................................12, 25, 26

*Minnesota Voters Alliamce v. Mansky*,
138 S. Ct. 1876 (2018) ......................................................................................20

*Morse v. Frederick*,
551 U.S. 393 (2007) ..........................................................................................17

*New York v. Ferber*,
458 U.S. 747 (1982) ..........................................................................................20

*Norma Kristie, Inc. v. City of Oklahoma City*,
572 F. Supp. 88 (W.D. Okla. 1983) .............................................................10, 23

*Reno v. ACLU*,
521 U.S. 844 (1997) ................................................................................10, 26, 28

*Sable Communications of California v. FCC*,
492 U.S. 115 (1989) ....................................................................................20, 21

iii

*Schacht v. United States*,
  398 U.S. 58 (1970) ....................................................................................23

*Schad v. Borough of Mount Ephraim*,
  452 U.S. 61 (1981) .....................................................................................8

*Smith v. Goguen*,
  415 U.S. 566 (1974) ..................................................................................24

*Southeastern Promotions, Ltd. v. Conrad*,
  420 U.S. 546 (1975) ....................................................................................8

*Southern Utah Drag Stars v. City of St. George*, No. 4:23-CV-00044-DN-PK,
  2023 WL 4053395 (D. Utah June 16, 2023) ..................................................9, 10

*Stanley v. Georgia*,
  394 U.S. 557 (1969) ..................................................................................10

*State v. Bagnes*,
  322 P.3d 719 (Utah 2014) ...........................................................................14

*State v. Crater*,
  388 So. 2d 802 (La. 1980) .....................................................................14, 25

*United States v. 12 200-Foot Reels of Super 8mm. Film*,
  413 U.S. 123 (1973) ..................................................................................15

*United States v. Miselis*,
  972 F.3d 518 (4th Cir. 2020) ......................................................................16

*United States v. Playboy Entertainment Group, Inc.*,
  529 U.S. 803 (2000) ........................................................................20, 21, 23

*United States v. Stevens*,
  559 U.S. 460 (2010) ..................................................................................23

*Virgil v. School Board of Columbia County*,
  862 F.2d 1517 (11th Cir. 1989) ...................................................................18

*Virginia v. Hicks*,
  539 U.S. 113 (2003) ..............................................................................11, 19

*Willis v. Town of Marshall*,
  426 F.3d 251 (4th Cir. 2005) ......................................................................24

*Winters v. New York*,
  333 U.S. 507 (1948) ..................................................................................10

*Woodlands Pride, Inc. v. Paxton*, No. CV H-23-2847,
  2023 WL 6226113 (S.D. Tex. Sept. 26, 2023)..................................................9, 18

**Statutes**

Fla. Stat. § 800.04(7) ......................................................................16, 17

Fla. Stat. § 827.11 ..................................................................................7

Fla. Stat. § 827.11(1)(a) ...............................................................7, 13, 19

Fla. Stat. § 827.11(1)(a)(1)–(3) ...........................................................22

Fla. Stat. § 847.001.......................................12, 13, 14, 15, 16, 19

Fla. Stat. § 847.001(11) ......................................................................13

Fla. Stat. § 847.001(19) .................................................................13, 15

Fla. Stat. § 847.001(20) ......................................................................13

Fla. Stat. § 847.001(7) ..........................................................................7

Fla. Stat. § 847.001(7)(a)–(c) ............................................................13

**Other Authorities**

1 *The Humanities: Cultural Roots and Continuities* (Mary Ann Frese Witt et al.
  eds., 1980) ........................................................................................18

## INTEREST OF AMICI CURIAE

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization dedicated to defending the principles of liberty and equality embodied in the Constitution. The ACLU Foundation of Florida ("ACLU of Florida") is one of the ACLU's statewide affiliates. As organizations dedicated to protecting free expression and the equal rights of lesbian, gay, bisexual, and transgender people, amici have a strong interest in ensuring that the freedom to perform drag and attend drag performances is not unconstitutionally abridged.

## STATEMENT OF COMPLIANCE WITH RULE 29

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. No one other than amici curiae, their members, or their counsel financed the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

"Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213–14 (1975). Drag performances—like other live theatrical and musical performances—are protected speech. And minors who wish to attend drag performances have a First Amendment right to do so. The government

does not have freewheeling authority to make it illegal for minors to view things that are shocking or inappropriate in the eye of the government censor.

Florida's so-called Child Protection Act (the "drag ban") directly infringes upon minors' First Amendment rights by prohibiting them from attending drag shows that officials might find "lewd" in some way. Defendant asserts that the drag ban, codified at Fla. Stat. § 827.11, merely applies the longstanding test for obscenity as to minors, but the statute conspicuously *departs* from that constitutional standard. Florida already has a statute defining obscenity for minors, which applies only to certain depictions of "nudity, sexual conduct, or sexual excitement." Fla. Stat. § 847.001(7). Florida's new drag ban extends beyond those pre-existing categories to cover "lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts." Fla. Stat. § 827.11(1)(a).

This new language is both overbroad and vague. The drag ban is overbroad because it prohibits minors from viewing performances that are not obscene for them, and every application of the statute to non-obscene performances is a content-based regulation on speech that cannot satisfy strict scrutiny. And the drag ban is vague because the term "lewd" is not defined in the law and has no clear meaning in this context. Venues that are subject to the law cannot know what dance moves or costumes might be considered "lewd" by local officials. Indeed, the lead sponsor of the bill proclaimed that even "drag queen story time," which features fully clothed

drag queens reading children's books, could be targeted under the drag ban's capacious restrictions. App. 235.

For all these reasons, and the reasons set forth in Plaintiff-Appellee's brief, the preliminary injunction should be affirmed.

## **ARGUMENT**

## I. **Minors Have a First Amendment Right to Attend Drag Performances.**

Drag performances, like other live theatrical productions, are protected speech. "All manner of speech—from pictures, films, paintings, drawings, and engravings, to oral utterance and the printed word—qualify for the First Amendment's protections." *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023) (internal quotation marks and citation omitted). "By its nature, theater usually is the acting out—or singing out—of the written word, and frequently mixes speech with live action or conduct." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 557–58 (1975). "But that is no reason to hold theater subject to a drastically different standard" than other protected mediums of expression. *Id.* at 558. "[L]ive entertainment, such as musical and dramatic works," are inherently expressive activities that "fall within the First Amendment guarantee." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65 (1981). And those protections extend not only to "political and ideological speech" but also to pure "[e]ntertainment." *Id.*

Minors who wish to attend drag performances have a First Amendment right to speak, and to be spoken to. "[M]inors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of materials to them." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794 (2011) (quoting *Erznoznik*, 422 U.S. at 212–213) (citation omitted). The government cannot, for example, make it a crime to admit minors to a "rock concert" or "political rally." *Id.* at 795 n.3.

Many minors—including, but by no means limited to, minors who are LGBTQ—may wish to attend drag shows because of the "political, social, and cultural messages involved in drag performances." *Woodlands Pride, Inc. v. Paxton*, No. CV H-23-2847, 2023 WL 6226113, at *14 (S.D. Tex. Sept. 26, 2023), *appeal docketed*, No. 23-20480 (5th Cir. Sept. 29, 2023). For drag performers and the people who wish to see them, drag "is an art form, a source of entertainment, and a form of activism and conveys a valuable political message . . . that individuals with gender presentation and identities outside the majoritarian norm are welcome in public places." *S. Utah Drag Stars v. City of St. George*, No. 4:23-CV-00044-DN-PK, 2023 WL 4053395, at *20 (D. Utah June 16, 2023) (internal quotation marks and footnotes omitted). "Given current political events and discussions, drag shows . . . are indisputably protected speech and are a medium of expression, containing

political and social messages regarding (among other messages) self-expression, gender stereotypes and roles, and LGBTQIA+ identity." *Id.*

But drag performances would still constitute protected speech even if they lacked a discernable or valuable message. The "First Amendment is not an art critic," *Norma Kristie, Inc. v. City of Oklahoma City*, 572 F. Supp. 88, 91 (W.D. Okla. 1983), and the "right to receive information and ideas, regardless of their social worth, is fundamental to our free society," *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (citing *Winters v. New York*, 333 U.S. 507, 510 (1948)). So long as they are not obscene for minors, the government does not have freewheeling authority to make it illegal for minors to view materials, including performances, that the government deems to be crude, vulgar, or age-inappropriate. *See Brown*, 564 U.S. at 793–96. When speech does not meet the constitutional test for obscenity, parents— not the government—are entrusted with the responsibility for determining what is appropriate for their own children. *See Brown*, 564 U.S. at 794–95 & n.3; *Reno v. ACLU*, 521 U.S. 844, 865 (1997); *Erznoznik*, 422 U.S. at 213–14.

## II. The Drag Ban's Expansion Beyond the Constitutional Test for Obscenity for Minors Is Unconstitutionally Overbroad.

On its face, Florida's drag ban is unconstitutionally overbroad because it covers new undefined categories of "lewd" performances that extend beyond the pre-existing test for obscenity for minors. A statute is overly broad if it "punishes a

substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003) (internal quotation marks and citation omitted). "[T]he overbreadth doctrine in effect requires courts to evaluate the *potential* reach of a statute, *conceivable* sets of circumstances, and *possible* direct and indirect burdens on speech." *Am. Booksellers v. Webb*, 919 F.2d 1493, 1499–500 (11th Cir. 1990). While "overbreadth" and "vagueness" are distinct doctrines, they "are related in that a court should evaluate the ambiguous as well as the unambiguous scope of the enactment." *Id.* at 1505–06 (internal quotation marks and citation omitted).

"[W]hen overly broad statutory language seems to sweep protected First Amendment expression directly into the scope of a regulation affecting speech, or indirectly places an undue burden on such protected activity, free expression can be chilled even in the absence of the statute's specific application to protected speech." *Id.* at 1499. Thus, "a statute found to be overbroad is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1303 (11th Cir. 2017) (internal quotation marks and citation omitted).

### A. The drag ban extends beyond the constitutional test for obscenity for minors to reach protected speech.

The drag ban conspicuously departs from the constitutional test for obscenity for minors established by *Miller v. California*, 413 U.S. 15 (1973), and *Ginsberg v. New York*, 390 U.S. 629 (1968). *See Brown*, 564 U.S. at 808 (Alito, J., concurring) (discussing the *Miller/Ginsberg* standard); *Am. Booksellers*, 919 F.2d at 1496 (same). "Under *Miller*, an obscenity statute must contain a threshold limitation that restricts the statute's scope to specifically described 'hard core' materials." *Brown*, 564 U.S. at 808 (Alito, J., concurring) (citing *Miller*, 413 U.S. at 23–25). "Materials that fall within this 'hard core' category may be deemed to be obscene if three additional requirements are met." *Id.*

(1)　An "average person, applying contemporary community standards must find the work, taken as a whole, appeals to the prurient interest";

(2)　"[T]he work must depict or describe, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and"

(3)　"[T]he work, taken as a whole, must lack serious literary, artistic, political, or scientific value."

*Id.* (quoting *Miller*, 413 U.S. at 24) (alterations incorporated).

Before it enacted the drag ban, Florida already had an obscenity statute that comported with *Miller* and *Ginsberg*. *See* Fla. Stat. § 847.001. That statute defines material that is obscene to minors as any "reproduction, imitation, characterization,

description, exhibition, presentation, or representation, of whatever kind or form, depicting nudity,[1] sexual conduct,[2] or sexual excitement[3]" and which meets the additional three prongs of the *Miller/Ginsberg* obscenity test. Fla. Stat. § 847.001(7)(a)–(c).

But Florida's drag ban does not just apply to the same "threshold" categories of speech covered by Fla. Stat. § 847.001. It applies to live performances "depict[ing] or simulat[ing] [(i)] nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 847.001, [(ii)] lewd conduct, or [(iii)] the lewd exposure of prosthetic or imitation genitals or breasts." Fla. Stat. § 827.11(1)(a). The statute thus applies to performances of "lewd conduct, or the

---

[1] "Nudity" is defined as "the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering; or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple; or the depiction of covered male genitals in a discernibly turgid state. A mother's breastfeeding of her baby does not under any circumstance constitute 'nudity,' irrespective of whether or not the nipple is covered during or incidental to feeding." Fla. Stat. § 847.001(11).

[2] "Sexual conduct" is defined as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadomasochistic abuse; actual or simulated lewd exhibition of the genitals; actual physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast with the intent to arouse or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed." Fla. Stat. § 847.001(19).

[3] "Sexual excitement" is defined as "the condition of the human male or female genitals when in a state of sexual stimulation or arousal." Fla. Stat. § 847.001(20).

lewd exposure of prosthetic or imitation genitals or breasts," even when the "lewd" conduct or exposure does not involve "nudity," "sexual conduct," or "sexual excitement," as defined by Fla. Stat. § 847.001.

"[U]nder any test of obscenity as to minors . . . 'such expression must be, in some significant way, erotic.'" *Erznoznik*, 422 U.S. at 213 n.10 (quoting *Cohen v. California*, 403 U.S. 15, 20 (1971)). But unless given a limiting construction, "the word lewd is much broader than obscene. Lewd means, among other things, vulgar, base, evil, wicked, poor, worthless, dissolute, lascivious, indecent, obscene, and salacious." *Cunningham v. State*, 400 S.E.2d 916, 921 (Ga. 1991); *accord State v. Bagnes*, 322 P.3d 719, 723 (Utah 2014) ("A *lewd* act is sometimes defined in general terms of impropriety—as something vulgar, base, or vile."). For these reasons, courts have consistently invalidated prohibitions on "lewd" speech and expression in the absence of a limiting statutory definition or judicial construction. *See D.C. v. City of St. Louis*, 795 F.2d 652, 654 (8th Cir. 1986) (invalidating ordinance prohibiting any "indecent or lewd act or behavior" where terms were not sufficiently defined ); *State v. Crater*, 388 So. 2d 802, 804 (La. 1980) (invalidating prohibition on maintaining "place of public entertainment" with "lewd dancing" where terms were not sufficiently defined); *City of Seattle v. Johnson*, 791 P.2d 266, 269 (Wash. Ct. App. 1990) (invalidating "lewd conduct" ordinance because it did not provide an exception for "non-obscene, expressive nude activity").

14

Moreover, because of the unusual way that the drag ban is drafted, it is impossible to give the term "lewd" a narrowing construction that would bring it within constitutional limits. Laws regulating lewd speech have been upheld when the term "lewd" has been narrowly construed to apply to "hard core" sexual activity as defined by *Miller/Ginsberg*. *See United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 130 n.7 (1973). But the *Miller/Ginsberg* test was already fully covered by the drag ban's references to "nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 847.001." And those pre-existing definitions already included "actual or simulated lewd exhibition of the genitals." Fla. Stat. § 847.001(19). The drag ban conspicuously adds additional and broader prohibitions on "lewd" performances that go beyond those pre-existing definitions.

In these circumstances, it is impossible to construe the drag ban's new prohibitions on "lewd" performances as merely restating the pre-existing definitions of performances that are obscene for minors. It is a "basic premise of statutory construction that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplusage." *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1271 (11th Cir. 2023) (citation and ellipses omitted); *accord Larimore v. State*, 2 So. 3d 101, 106 (Fla. 2008), *as revised on denial of reh'g* (Jan. 29, 2009). Construing the prohibitions on "lewd" performances as merely

covering the same territory as the prohibitions on performances with "nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 847.001" would effectively read the "lewd" prohibitions out of the statute entirely. *Cf. United States v. Miselis*, 972 F.3d 518, 537 (4th Cir. 2020) (rejecting proposal to limit the terms "promote" and "encourage" to mean "incite" because the term "incite" is already included in the statute); *Ex parte Lowry*, 639 S.W.3d 151, 162 (Tex. Ct. App. 2021) (refusing to limit prohibition on possessing "lewd visual material" to obscenity because separate statutes "already prohibit obscenity"); *Cunningham*, 400 S.E.2d at 921 (rejecting proposal to limit prohibition on "lewd" bumper stickers to apply just to obscene speech because "[a] bumper sticker exhibiting obscene material would [already] be prohibited by [the state's general obscenity] statute").

Defendant also cites Florida precedent interpreting the term "lewd and lascivious act," *see* Def.'s Br. 40 (citing *Chesebrough v. State*, 255 So. 2d 675, 677 (Fla. 1971)), and to a statute concerning "lewd and lascivious exhibition[s]" in the presence of a child under sixteen, *see* Def.'s Br. 6 (citing Fla. Stat. § 800.04(7)). But the phrase "lewd and lascivious" is much narrower than the phrase "lewd" standing alone. Indeed, the statute cited by Defendant specifically defines "lewd and lascivious exhibition" as intentional masturbation, intentionally exposing genitals, and other "sexual act[s]" such as "sadomasochistic abuse, sexual bestiality, or the

simulation of any act involving sexual activity." Fla. Stat. § 800.04(7). According to Defendant's brief, *see* Def.'s Br. 5–6, the fact that the "lewd and lascivious exhibition" statute was "limited in scope" only to those specific activities was one of the reasons why Florida passed the "more comprehensive" drag ban, which covers "lewd" conduct more broadly.

In the absence of a limiting construction, the additional prohibitions on "lewd" performances reach a wide array of performances that might be deemed vulgar, crude, or offensive but are nonetheless not obscene for minors. For example, in *Bethel School District No. 403 v. Fraser*, 478 U.S. 675 (1986), the Supreme Court held—in light of the special characteristics of a school environment—that a school could punish a student for giving a "lewd speech" at a school assembly that was filled with "pervasive sexual innuendo." *Id.* at 684. But if the student had "delivered the same speech in a public forum outside the school context, he would have been protected." *Morse v. Frederick*, 551 U.S. 393, 394 (2007). Indeed, films and movies with similar types of vulgar jokes and sexual innuendo are a staple of popular adolescent entertainment in "PG-13" or "R" rated movies. That is why such jokes are often referred to "immature" or "sophomoric."

Dramatic comedy has long been filled with similarly lewd humor and innuendo, including prosthetics and drag. Classic Greek comedies are replete with "big phalluses, padding, animal costumes, grotesque masks, colloquial speech, and

obscene jokes." *Virgil v. Sch. Bd. of Columbia Cnty.*, 862 F.2d 1517, 1525 n.9 (11th Cir. 1989) (quoting 1 *The Humanities: Cultural Roots and Continuities* 68, (Mary Ann Frese Witt et al. eds., 1980)). Drag performances, which often employ a form of parody and exaggeration to comment on gender roles, may also use padding and prosthetics for comedic effect. For example, a drag queen imitating Dolly Parton may use "a prosthetic breastplate" to "exaggerate her female sexual characteristics." *Woodlands Pride*, 2023 WL 6226113, at *7. Some people might describe such a costume as "lewd," but the alleged lewdness would be for comedic effect, not for an erotic one. And "[t]he First Amendment's protections apply to jokes, parodies, satire, and the like, whether clever or in poor taste." *Bailey v. Iles*, 87 F.4th 275, 283 (5th Cir. 2023).

The broad sweep of the term "lewd" is further reinforced by enforcement actions that the DeSantis administration has taken against drag shows based on other statutes prohibiting "lewd" conduct. As one example of purportedly lewd conduct, the DeSantis administration alleged that a drag Christmas show contained "sexually explicit themes and prurient content presented through perverted versions of popular children's Christmas songs," such as a song called "Screwdolph the Red-Nippled Reindeer." App. 174. That song, which featured a person dressed up as a reindeer with bright lights on their chest, included the lyrics, "Screwdolph the Red-Nippled Reindeer, had a very shiny bust," and "Screwdolph with your nipples so bright won't

you guide my sleigh tonight." App. 174. Neither the song nor the costume could reasonably be described as "erotic," and the lewdness of the language is comparable to what someone could expect when watching a PG-13 movie. But the DeSantis administration nevertheless selected the song as an example of the show's lewdness, emphasizing the perceived offensiveness of parodying a Christmas song. In doing so, the DeSantis administration's enforcement action "highlights the precise danger posed by" the drag ban's expansion beyond the traditional test for obscenity: "that the ideas expressed by speech . . . may be the real reason for governmental proscription." *Brown*, 564 U.S. at 799.

**B.     The drag ban's prohibition on "lewd" performances is a content-based restriction on speech that fails strict scrutiny.**

The drag ban's prohibition on "lewd" performances is overbroad because every application of the drag ban to speech that is not obscene for minors necessarily implicates First Amendment protected speech. To the extent that the drag ban has any arguable "legitimate sweep," *Virginia*, 539 U.S. at 118–19, those applications of the statute are fully covered by the references to "nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 847.001," Fla. Stat. § 827.11(1)(a). Every application of the additional "lewd" provisions is a content-based regulation of protected speech that fails strict scrutiny. *See Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 256 (2002) (concluding that prohibition in Child

Pornography Prevention Act of 1996 is "overbroad and unconstitutional" because it "covers materials beyond the [unprotected] categories recognized in [*New York v.*] *Ferber*[, 458 U.S. 747 (1982)] and *Miller*"); *Ex parte Lo*, 424 S.W.3d 10, 20 (Tex. Crim. App. 2013) (concluding that prohibition on "sexually explicit communications" with minors is overbroad because "everything" it punishes "is either already prohibited by other statutes (such as obscenity, distributing harmful material to minors, solicitation of a minor, or child pornography) or is constitutionally protected").

### i. The government does not have a compelling interest in prohibiting minors from attending "lewd" drag performances.

Where, as here, the "overriding justification for the regulation is concern for the effect of the subject matter on young viewers," it "is the essence of content-based regulation." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 811–12 (2000). The Supreme Court has made clear that "restrictions based on content must satisfy strict scrutiny." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). To satisfy strict scrutiny the government must demonstrate that its restrictions on non-obscene speech are "a narrowly tailored effort to serve [a] compelling government interest." *Sable Commc'ns of Cal. v. FCC*, 492 U.S. 115, 131 (1989). And "[w]here the designed benefit of a content-based speech restriction is to shield the sensibilities of

listeners, the general rule is that the right of expression prevails, even where no less restrictive alternative exists." *Playboy*, 529 U.S. at 813.

Defendant argues that the drag ban serves a compelling interest in "protect[ing] young children from the harm of witnessing an obscene live performance." Def.'s Br. 30. But she fails to offer a compelling interest in preventing minors from attending "lewd" drag shows that are not actually obscene for them. Nor could she. "Speech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Erznoznik*, 422 U.S. at 213–14.

Nor can the statute be justified by an interest in helping parents protect minors from unwanted or inadvertent exposure to lewd or indecent speech. Defendant, *see* Def.'s Br. at 33–34, notes that the Supreme Court in *FCC v. Pacifica Foundation*, 438 U.S. 726 (1978), upheld the FCC's prohibition on broadcasting indecent speech to protect minors in the home. But the rationale of that decision, which held that a station could not broadcast a recording of George Carlin's "Filthy Words" monologue, was based on "the 'unique' attributes of broadcasting, noting that broadcasting is 'uniquely pervasive,' [and] can intrude on the privacy of the home without prior warning as to program content." *Sable*, 492 U.S. at 127. Those concerns about preventing unwanted surprise at home are wholly absent when a

teenager affirmatively attends a live performance, especially when they do so accompanied by their parents. *Pacifica* does not allow the government to make it a crime for parents to take their children to a George Carlin show. And it does not allow it to criminalize attendance at "lewd" drag shows either.

### ii. The drag ban is not narrowly tailored, nor is it the least restrictive means available to achieve the government's aim.

Even accepting that the government has a compelling interest in preventing exposure to materials that are obscene for minors, the drag ban's prohibition on "lewd" performances is not narrowly tailored to achieve that goal. The government's interests in protecting minors from obscene materials would have been fully addressed by incorporating Florida's pre-existing definition of obscenity for minors. The prohibitions on "lewd" performances "do[] not serve any compelling interest that is not already served by a separate, more narrowly drawn, statutory provision." *Ex parte Lo*, 424 S.W.3d at 19–20.

The drag ban's restriction on "lewd" performances cannot be saved by virtue of its limitation to performances that appeal to the prurient interest, are patently offensive, and lack serious literary, artistic, political, or scientific value. *See* Fla. Stat. § 827.11(1)(a)(1)–(3). As the Supreme Court warned, those three additional requirements from the *Miller*/*Ginsberg* tests for obscenity may not "be used as a general precondition to protecting *other* types of speech." *United States v. Stevens*,

559 U.S. 460, 479 (2010); *see also Brown*, 564 U.S. at 792 (rejecting argument that legislature could ban sale of violent video games to minors by "appending a saving clause" from *Miller*/*Ginsberg*).

The First Amendment does not tolerate content-based censorship of protected speech even when dealing with speech that is considered "low value" by some. "Most of what we say to one another lacks 'religious, political, scientific, educational, journalistic, historical, or artistic value' (let alone serious value), but it is still sheltered from government regulation." *Stevens*, 559 U.S. at 479. "It may be that" some drag "performances [are] crude and amateurish and perhaps unappealing, but the same thing can be said about many theatrical performances." *Schacht v. United States*, 398 U.S. 58, 61–62 (1970). The government's authority to regulate obscene performances, even as it relates to minors, does not include the power to act as "an art critic." *Norma Kristie*, 572 F. Supp. at 91. "The Constitution exists precisely so that opinions and judgments, including esthetic and moral judgments about art and literature . . . are for the individual to make, not for the Government to decree, even with the mandate or approval of a majority." *Playboy*, 529 U.S. at 818. A contrary rule "would risk leaving regulations in place that sought to shape our unique personalities or to silence dissenting ideas." *Id.*

### III. The Drag Ban's Expansion Beyond the Constitutional Test for Obscenity Is Unconstitutionally Vague.

The drag ban's prohibition on "lewd" performances is also unconstitutionally vague under the Fourteenth Amendment. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). An act can be vague for two reasons: "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). And where a statute "is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1974); *cf. Willis v. Town of Marshall*, 426 F.3d 251, 261 (4th Cir. 2005) (distinguishing between restrictions on lewd dancing that occurs as part of a performance, which are subject to a heightened vagueness standard, and restrictions on lewd recreational dancing, which are not).

As discussed above, the drag ban's undefined prohibition on "lewd" performances could apply to a wide range of speech that is deemed by the government to be vulgar or inappropriate for minors. And, as discussed above, while the term "lewd" has been upheld when narrowly construed to be synonymous with

"hard core" pornography, such a limiting construction is impossible in light of the statute's other provisions and official public statements by the sponsor declaring that the ban applies to "drag queen story time." App. 235. Performers and venues that are subject to the drag ban have no way of knowing what kinds of performances will be prohibited and which will be permitted. For example, are suggestive dancing and revealing costumes at Miley Cyrus or Taylor Swift concerts considered "lewd"? How about skimpy outfits worn by male and female professional wrestlers? Or is merely appearing publicly in drag an act of lewdness in the eyes of some? As the Supreme Court of Louisiana recognized over forty years ago when holding that a prohibition on "lewd dancing" was unconstitutionally vague, "[t]he quality of lewdness, in the absence of specific legislative definition, is in the mind of the beholder." *Crater*, 388 So. 2d at 804.

Defendant contends that the term "lewd" is no more vague than the rest of the *Miller/Ginsberg* test for obscenity, such as the requirement that the speech appeal to "prurient" interest and be "patently offensive." Def.'s Br. 12. But that argument confuses the critical difference between *Miller/Ginsberg*'s "threshold limitation" and the remaining three parts of the test. *See Brown*, 564 U.S. at 808 (Alito, J., concurring) (citing *Miller*, 413 U.S. at 23–25). Precisely because other provisions of the test are more malleable, *Miller/Ginsberg* requires that obscenity statutes be limited to "sexual conduct specifically defined by the applicable state law." *Id.*

(citing *Miller*, 413 U.S. at 24). The threshold limitation of *Miller/Ginsberg* to specific sexual conduct thus plays a critical role in "reduc[ing] the vagueness inherent in [subsequent] open-ended" provisions. *Reno*, 521 U.S. at 873.

The vagueness is compounded by the fact that the drag ban creates a constantly shifting standard that fluctuates based on the age of the particular minor who attends a drag show. Material that is obscene for a young child will not be obscene for an older teenager. Other laws prohibiting distribution of material that is obscene as to minors have thus been upheld only after being narrowly limited so that "if any reasonable minor, including a seventeen-year-old, would find serious value, the material is not 'harmful to minors.'" *Webb*, 919 F.2d at 1504–05; *see also ACLU v. Ashcroft*, 322 F.3d 240, 253–55 (3d Cir. 2003), *aff'd & remanded*, 542 U.S. 656 (2004) (identifying flaw in Child Online Protection Act for failing to apply that standard).

But, instead of limiting the drag ban's prohibition to be judged from that consistent standpoint, Florida requires a performance venue to constantly make subtle judgments about what would be prohibited for each individual minor depending on their age. Far from "resolv[ing] [the] constitutional concern the Third Circuit identified in *ACLU v. Ashcroft*," *see* Def.'s Br. 24, that variable standard is precisely what the Third Circuit found to be unconstitutional: To comply "they must guess at the potential audience of minors and their ages so that the publishers can

refrain from posting material that will trigger the prurient interest or be patently offensive with respect to those minors who may be deemed to have such interests." *ACLU v. Ashcroft*, 322 F.3d at 254. "Attaching criminal sanctions to a mistaken judgment about the contours of [a] novel and nebulous category of 'harmful to minors' speech clearly imposes a heavy burden on the exercise of First Amendment freedoms." *Ashcroft v. ACLU*, 542 U.S. 656, 675 (2004) (Stevens, J., concurring).

Untethered to the constitutional definition of obscenity for minors, the drag ban's prohibitions on "lewd" performances are also unconstitutionally vague because they delegate enforcement "to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108–09. While phrased in ostensibly neutral terms, the drag ban was unquestionably adopted because of government officials' objections to "lewdness" in drag shows. The DeSantis administration has controversially pursued enforcement actions against drag shows based on other statutes prohibiting "lewd" conduct despite the fact that undercover agents who attended the shows did not think that the performance included any content that qualified as "lewd acts." *See* App. 264. And in another enforcement action, the DeSantis administration relied on an antiquated Supreme Court of Florida decision to argue "that 'men impersonating women' in the context of 'suggestive and indecent' performances constitutes a public nuisance." App. 105 (citing *Fed.*

*Amusement Co. v. State ex rel. Tuppen*, 32 So. 2d 1 (Fla. 1947)). Without being limited to the settled definitions of obscenity, the statute's vague prohibition on "lewd performances" invites these sorts of arbitrary enforcement decisions against drag performers based, at least in part, on disapproval of "drag" itself. Indeed, the lead sponsor of the bill proclaimed that even "drag queen story time" could be targeted. App. 235.

The vagueness of the drag ban is a feature, not a bug. Instead of drafting a restriction that hews to the settled test of obscenity for minors, Florida added new prohibitions on "lewd" performances to reach a broader category of new, but undefined, conduct. The inevitable result is that performance venues, which are left to guess about how far the statute extends beyond the pre-existing test for obscenity, will err in favor of exclusion to be sure they do not fall on the wrong side of the new law—and officials who enforce it. The "obvious chilling effect," *Reno*, 521 U.S. at 872, is precisely why laws regulating speech are held to a heightened vagueness standard, and why the district court properly concluded that the drag ban was likely void for vagueness.

## CONCLUSION

The district court's preliminary injunction should be affirmed.

Respectfully submitted,

/s/ *Joshua A. Block.*
Joshua A. Block
Emerson J. Sykes
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
T. (212) 549-2593
F. (212) 549-2650
jblock@aclu.org
esykes@aclu.org

Daniel B. Tilley
Florida Bar No. 102882
ACLU FOUNDATION OF FLORIDA
4343 W. Flagler St., Suite 400
Miami, FL 33134
T. (786) 363-2714
F. (786) 363-1257
DTilley@aclufl.org

*Counsel for amici curiae*

January 29, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned counsel certifies that the foregoing document complies with the type-volume limitation set forth in Fed. R. App. P. 29(b)(4), and typeface requirements and type-style requirements set forth in Fed. R. App. P. 32(a)(5)–(6), because it contains 5,469 words and has been prepared in a proportionally spaced typeface, Times New Roman, size fourteen points, using the word-processing system Microsoft Word 2019.

January 29, 2024

*/s/ Joshua A. Block*
Joshua A. Block
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION

*Attorney for amici curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2024, the foregoing was filed electronically with the Clerk of Court through the appellate CM/ECF system. I further certify that all parties required to be served have been served.

January 29, 2024

/s/ Joshua A. Block
Joshua A. Block
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION

*Attorney for amici curiae*