No. 23-12160

# In the United States Court of Appeals for the Eleventh Circuit

HM FLORIDA-ORL, LLC,

*Plaintiff-Appellee,*

v.

MELANIE GRIFFIN, Secretary,
Department of Business and
Professional Regulation,
State of Florida,

*Defendant-Appellant.*

## PETITION FOR REHEARING AND REHEARING EN BANC

On Appeal from the United States District Court
for the Middle District of Florida
Case No. 6:23-cv-950-GAP-LHP

JAMES UTHMEIER
*Attorney General*

JEFFREY PAUL DESOUSA
*Acting Solicitor General*
NATHAN A. FORRESTER
*Chief Deputy Solicitor General*
ALLEN L. HUANG
DARRICK MONSON
*Deputy Solicitors General*

OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300 (phone)
(850) 414-2672 (fax)
nathan.forrester@myfloridalegal.com

June 3, 2025

*Counsel for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant certifies that, to the best of her knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-5:

1.    American First Legal Foundation

2.    Costello, David M.

3.    Department of Business and Professional Regulation, State of Florida

4.    DeSantis, Ron

5.    DeSousa, Jeffrey Paul

6.    Edgington, Craig A.

7.    Forrester, Nathan A.

8.    Griffin, Melissa

9.    Huang, Allen L.

10.    HM Florida-ORL, LLC

11.    Israel, Gary S.

12.    Mitchell, Jonathan F.

13.   Monson, Darrick

14.   Moody, Ashley

15.   Presnell, Hon. Gregory A.

16.   Price, Hon. Leslie Hoffman

17.   Stafford, William H.

18.   Stewart, Melissa

19.   Timmons, Brice M.

20.   Uthmeier, James

21.   Whitaker, Henry Charles

# RULE 40 CERTIFICATION

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and of this Circuit and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court: *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *Renne v. Geary*, 501 U.S. 312 (1991); *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979); *Miller v. California*, 413 U.S. 15 (1973); *Ginsberg v. New York*, 390 U.S. 629 (1968); *Am. Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990); *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975); *Georgia v. President of the U.S.*, 46 F.4th 1283 (11th Cir. 2022).

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves questions of exceptional importance: whether a plaintiff that presents no evidence of activity even arguably proscribed by a statute may nevertheless claim Article III standing to challenge the constitutionality of the statute; whether a plaintiff may bypass the requisite showing that its conduct is at least arguably proscribed

by the statute through speculation that the defendant will seek to enforce it against the party no matter what its true scope; whether use of the phrase "lewd conduct" in an obscenity regulation is unconstitutionally vague and overbroad; whether redundant descriptions of sexually explicit conduct in an obscenity regulation receive no weight in determining whether the regulation is substantially overbroad; whether a regulation that requires exclusion of a child from a live performance obscene for a child of that age is unconstitutionally vague and overbroad; whether a court may issue a universal injunction in favor of nonparties to the case on the grounds that facially overbroad statutes are different and that a statewide injunction of a state statute is different from a nationwide injunction of a federal statute.

*/s/ Nathan A. Forrester*
Nathan A. Forrester
Chief Deputy Solicitor General

# TABLE OF CONTENTS

RULE 40 CERTIFICATION .....................................................................i

TABLE OF AUTHORITIES...................................................................iv

INTRODUCTION..................................................................................1

COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ...............................................................................................2

STATEMENT OF FACTS.......................................................................2

SUMMARY OF ARGUMENT .................................................................4

ARGUMENT .........................................................................................6

I.   The majority opinion threatens to upend pre-enforcement standing doctrine in this Circuit.......................................................6

II.  The majority's First Amendment analysis makes it nearly impossible for a state to regulate the exposure of children to age-inappropriate performances. ......................................................9

III. The majority's affirmance of universal relief contravenes precedents of this Court and the Supreme Court, widens an existing circuit split, and presents a question of exceptional importance...................................................................................14

CONCLUSION ....................................................................................20

CERTIFICATE OF COMPLIANCE......................................................21

CERTIFICATE OF SERVICE...............................................................22

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003) ...................................... 13

*Am. Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990) .................. i, 13

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ......................................... 17

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289
  (1979)................................................................................. i, 4, 7, 8

*Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989) ......... i, 9, 19

*Brown v. Trs. of Bos. Univ.*, 891 F.2d 337 (1st Cir. 1989) ...................... 18

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ................................... 19

*Chesebrough v. State*, 255 So. 2d 675 (Fla. 1971) ................................. 10

*City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020) ........................... 18

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)............................ 18

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975) ................................. i, 16

*Florida v. Department of Health & Human Services*, 19 F.4th
  1271 (11th Cir. 2021) ......................................................................... 18

*Garcia v. Exec. Dir., Fla. Comm'n on Ethics*, No. 23-10872
  (11th Cir. June 5, 2023) ..................................................................... 17

*Garcia v. Stillman*, 661 F. Supp. 3d 1168 (S.D. Fla. 2023) ................... 16

*Garcia v. Stillman*, No. 22-cv-24156, 2023 WL 3478450 (S.D.
  Fla. May 16, 2023) ............................................................................. 16

\* *Georgia v. President of the U.S.*, 46 F.4th 1283 (11th Cir.
  2022)......................................................... i, 6, 14, 17, 18, 19

iv

*Ginsberg v. New York*, 390 U.S. 629 (1968) ........................................ i, 13

*Greenberg v. Lehocky*, 81 F.4th 376 (3d Cir. 2023) ................................. 8

*Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1 (2023) (mem.) ............... 4

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) ............................................................................ 14

*Hamling v. United States*, 418 U.S. 87 (1974) ...................................... 10

*HM Florida-ORL, LLC v. Gov'r of Fla.*, No. 23-cv-950, 2023
   WL 6785071 (11th Cir. Oct. 11, 2023) ............................................... 15

*L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S.
   32 (1999) ............................................................................................. 15

*L.W. v. Skrmetti*, 73 F.4th 408 (6th Cir. 2023) ..................................... 19

*Labrador v. Poe*, 144 S. Ct. 921 (2024) ........................................... 14, 17

*Lewis v. Casey*, 518 U.S. 343 (1996) ...................................................... 18

*Louisiana v. Becerra*, 20 F.4th 260 (5th Cir. 2021) ............................... 18

*Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) ................... 18

*Miller v. California*, 413 U.S. 15 (1973) .......................................... i, 5, 10

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ................. 18

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) .............................. i, 5, 12

*Renne v. Geary*, 501 U.S. 312 (1991) ...................................................i, 9

*Rodgers v. Bryant*, 942 F.3d 451 (8th Cir. 2019) ................................... 18

*Roe v. U.S. Dep't of Def.*, 947 F.3d 207 (4th Cir. 2020) ........................ 18

*Roth v. United States*, 354 U.S. 476, 491–92 (1957) .............................. 10

*Scott v. Donald*, 165 U.S. 58 (1897) ........................................................ 18

*State v. Weeks*, 202 So. 3d 1 (Fla. 2016) .................................................. 11

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...................... i, 8

*Thornhill v. Alabama*, 310 U.S. 88 (1940) .............................................. 16

*U.S. Dep't of Def. v. Meinhold*, 510 U.S. 939 (1993) .............................. 18

*United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123 (1973) ........................................................................................... 10

*United States v. Stevens,* 559 U.S. 460 (2010) ........................................ 16

*Webster v. Fall*, 266 U.S. 507 (1925) ...................................................... 17

## Statutes

Fla. Laws ch. 2023-94 ................................................................................. 1

Fla. Stat. § 827.11 ........................................................................... 1, 2, 3

Fla. Stat. § 847.001 .................................................................................. 11

## Other Sources

Fla. Std. Jury Instr. (Crim.) § 11.10 ...................................................... 10

# INTRODUCTION

Florida enacted the Protection of Children Act in 2023[1] to shield children from the harmful effects of obscene sexual performances. The Act penalizes admitting a child to an "adult live performance," Fla. Stat. § 827.11(3)–(4), which is a performance that features nudity or sexual activity and is obscene for a child of that age. *Id.* § 827.11(1)(a). This law is neither remarkable nor extreme. Fair readers will applaud its common-sense effort to protect kids.

A divided panel of this Court nevertheless held that the Act violates the First Amendment. Worse still, the panel affirmed a preliminary injunction preventing enforcement of the Act against not only Plaintiff-Appellee HM Florida-ORL, LLC ("HM") but also any other entity in the State. Its opinion unsettles multiple legal doctrines governing the power of Article III courts and the interpretation of the First Amendment. Defendant-Appellant Melanie Griffin, Secretary of the Florida Department of Business and Professional Regulation ("DBPR"), therefore petitions for rehearing or rehearing en banc.

---

[1] Fla. Laws ch. 2023-94 (SB 1438).

## COURSE OF PROCEEDINGS AND
## DISPOSITION OF THE CASE

In May 2023, HM filed its complaint in the U.S. District Court for the Middle District of Florida against Secretary Griffin, claiming that Florida's Protection of Children Act was facially unconstitutional. DE1. The Middle District preliminarily enjoined enforcement of the Act against anybody in the State. DE30. On May 14, 2025, a divided merits panel of this Court upheld the universal injunction.

## STATEMENT OF FACTS

Florida's Protection of Children Act makes it a first-degree misdemeanor to "knowingly admit a child to an adult live performance." Fla. Stat. § 827.11(3), (4). An "adult live performance" has two components, tracking the two stages of the *Miller* obscenity test. First, it must be a "show, exhibition, or other presentation in front of a live audience which, in whole or in part, depicts or simulates nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 847.001, lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts." *Id.* § 827.11(1)(a). Second, it must "[p]redominantly appeal[] to a prurient, shameful, or morbid interest"; be "patently offensive to prevailing standards in the adult community of this state as a

whole with respect to what is suitable material or conduct for the age of the child present"; and "[t]aken as a whole," be "without serious literary, artistic, political, or scientific value for the age of the child present." *Id.* § 827.11(1)(a)1.–3.

HM operates a central Florida restaurant called Hamburger Mary's that features live entertainment, including drag shows. On May 22, 2023, five days after enactment of the Protection of Children Act, HM sued Secretary Griffin, challenging the constitutionality of the Act on its face. DE1. HM also moved for a preliminary injunction. DE6.

As injury, HM claimed that the Act had prompted it to exclude children from its drag shows, resulting in loss of business. DE1 at 18. Yet HM professed that its drag shows contained "no lewd activity, sexually explicit shows, disorderly conduct, public exposure, obscene exhibition, or anything inappropriate for a child to see." DE1 at 6. HM did not present any other evidence besides its verified complaint to support its preliminary injunction motion.

The district court granted HM's motion and applied the preliminary injunction statewide. DE30 at 25. The Secretary appealed and moved both this Court and the U.S. Supreme Court to stay the injunction to the

extent it applied to nonparties. Split panels of both courts denied the stays. DE26 (11th Cir.); *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1 (2023) (mem.). On May 14, 2025, a divided merits panel of this Court affirmed the preliminary injunction.

## SUMMARY OF ARGUMENT

The panel majority erred first in determining that HM had standing. A plaintiff in a pre-enforcement challenge bears the burden of showing that it intends to engage in conduct "arguably affected with a constitutional interest, but proscribed by [the] statute" *and* faces "a credible threat of prosecution." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The majority rewrote that test, suggesting that plaintiffs need not show that their conduct is arguably proscribed as long as there is a credible threat of enforcement. The majority thus ignored the Secretary's concession that the conduct described in HM's complaint did not violate the Protection of Children Act. The majority further found a credible threat based on statements by officials who do not enforce the statute and on past enforcement of different statutes against different conduct. Applying its novel test, the panel held erroneously that HM had standing.

Second, the majority erred in ruling that the Act was substantially overbroad under the First Amendment. It focused myopically on the term "lewd conduct" in the Act's definition of "adult live performance." Inclusion of that term rendered the Act vague and therefore overbroad, the majority held, because "lewd conduct" was not "specifically defined," as required by *Miller v. California*, 413 U.S. 15, 24 (1973). But the term "lewd" has long been defined by the Florida Supreme Court and Florida's standard jury instructions, and its use in federal obscenity statutes has also been upheld many times by the U.S. Supreme Court.

The majority reached its alarming conclusion by deeming "lewd conduct" to have "in essence no 'legitimate sweep,'" because "the rest of the Act's prohibitions cover the bulk of content that can be deemed obscene under *Miller*." Op. 77 n.17. Because of that overlap, the majority effectively erased the many unquestionably legitimate applications of "lewd conduct," leaving little to weigh in the overbreadth balance against what the majority deemed to be illegitimate applications of the supposedly indiscernible phrase. *See Moody v. Netchoice*, 603 U.S. 707, 723 (2024) (statute is overbroad if "a substantial number of [its] applications are unconstitutional, judged in relation to the statute's plainly legitimate

sweep"). This bizarre overbreadth calculus, in which the legitimate regulation of obscenity gets canceled if the statute covers that application twice, lacks any footing in precedent. It also fails to assess the balance of constitutional versus unconstitutional applications for the statute as a whole, focusing instead on just one provision.

Apart from its flawed First Amendment analysis, the panel erred in affirming a statewide injunction. The "rare" circumstances justifying universal relief reduce to one "core question": Is universal relief "necessary to offer full relief to the plaintiffs"? *Georgia v. President of the U.S.*, 46 F.4th 1283, 1304, 1306 (11th Cir. 2022). Here it is not. An injunction limited to HM will protect it fully from any injury. And contrary to the majority's view, it is immaterial that HM claims overbreadth or that the injunction here would not be nationwide.

## ARGUMENT

## I. The majority opinion threatens to upend pre-enforcement standing doctrine in this Circuit.

In its verified complaint—its only evidence at this stage of the proceedings—HM represented that it hosts "family friendly" performances that contain "no lewd activity, sexually explicit shows, disorderly conduct, public exposure, obscene exhibition, or anything inappropriate for

a child to see." DE1 at 6. As the Secretary has conceded, DE30 at 32 (11th Cir.), these performances bear none of the features of an "adult live performance" under the Act. On this record, therefore, HM has shown neither that it wishes to engage in conduct "arguably . . . proscribed" by the Act nor that it faces a "credible threat of prosecution." *Babbitt*, 442 U.S. at 298. That should have ended the matter.

The majority nevertheless deemed HM to have standing based on the Act's coverage of "lewd conduct." The majority never explained how the Florida Supreme Court could interpret the statutory term "lewd conduct" to include merely wearing "clothing more conventionally worn by the other sex," without any actual "lewd activity." DE1 at 6. Rather it surmised that DBPR "might" consider such shows lewd. Op. 13. As support, it cited President Trump's recent executive order on gender issues. *Id.* (quoting Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025)). This order has no bearing on the meaning of a Florida statute.

The majority also collapsed the "arguably proscribed" requirement into the "credible threat" requirement by concluding that HM's conduct was arguably proscribed as long as DBPR "might" take enforcement action against it. Op. 13. But the "arguably proscribed" requirement turns

on how the Florida Supreme Court would interpret the Act, not on a defendant's propensity for enforcement. *See Greenberg v. Lehocky*, 81 F.4th 376, 385 (3d Cir. 2023). If the Florida Supreme Court would not interpret "lewd conduct" to include mere cross-dressing, that conduct would not be proscribed, arguably or otherwise, no matter what a court thinks DBPR "might" do. A plaintiff must show both that the conduct is arguably proscribed *and* that there is a credible threat of enforcement. *Babbitt*, 442 U.S. at 298.

Compounding the problem, the majority treated the statement of a single legislator as "appropriate" indication of "the threat of an enforcement action." Op. 17 & n.2. But the legislature does not enforce the law, and a single legislator's statements do not reflect the views of the legislature as a whole. Nor can the majority draw support from DBPR's enforcement of "different statutes" against venues that admitted children to drag shows which seemed "somewhat more risqué" than HM's. Op. 15. A statute's "past enforcement against *the same conduct*" is what marks a threat of enforcement, not enforcement of a different statute against different conduct. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (emphasis added).

**II. The majority's First Amendment analysis makes it nearly impossible for a state to regulate the exposure of children to age-inappropriate performances.**

No more sound was the majority's ruling on the merits. The majority determined that the Act was unconstitutionally overbroad based in part on the Act's supposed vagueness, but it never ruled in terms that the Act was void for vagueness under the Fourteeth Amendment Due Process Clause. Rather, it treated the Act's supposed vagueness as "exacerbat[ing] overbreadth concerns." Op. 32.[2]

There are two problems with this approach. The first is the irony of professing to be "stumped" by a statute's meaning, Op. 51, but then assuming the broadest possible application of a statute. The responsibility of a court is to avoid rather than create constitutional concerns. *See* Diss. 20. Thus the proper solution to any perceived vagueness (and resulting overbreadth) is to sever the vague provision or employ a savings construction, not invalidate the entire law. *See Hamling v. United States*, 418 U.S.

---

[2] The majority should never have reached the question of facial overbreadth to begin with. "It is not the usual judicial practice, . . . nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, *before it is determined that the statute would be valid as applied.*" *Renne v. Geary*, 501 U.S. 312, 324 (1991) (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 484–85 (1989) (emphasis added)).

87, 110–16 (1974); *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 130 n.7 (1973).

The second and more fundamental problem is that the Act is not vague. The majority deemed two provisions vague: "lewd conduct" and the age-variable obscenity test. The majority required heightened precision in the "lewd conduct" provision because of its use in an obscenity statute, where such terms must be "specifically defined by the applicable state law, as written or authoritatively construed." *Miller*, 413 U.S. at 24. But "lewd conduct" draws on the well-settled meaning of "lewd" in Florida law, defined by the State's highest court to include the "indulgence of lust, signifying that form of immorality which has a relation to sexual impurity" and "indicat[ing] gross indecency with respect to the sexual relations." *Chesebrough v. State*, 255 So. 2d 675, 677 (Fla. 1971); *see also* Fla. Std. Jury Instr. (Crim.) § 11.10(d). Florida judges and juries have successfully applied the term for decades. And the Supreme Court has repeatedly upheld use of "lewd," without further definition, in federal obscenity statutes. *Hamling*, 418 U.S. at 115; *Reels*, 413 U.S. at 130 n.7; *Roth v. United States*, 354 U.S. 476, 491–92 (1957).

"Lewd conduct" also takes meaning from the other kinds of sexually explicit conduct specifically defined by the Act, all of which the majority acknowledged to be "extensively detailed" and therefore knowable. Op. 46, 49–50. These terms—"nudity," "sexual conduct," "sexual excitement," and "specific sexual activities"—cover indecent exposure; various sex acts, actual or simulated; and states of sexual arousal. Fla. Stat. § 847.001. Because "a word is known by the company it keeps," *State v. Weeks*, 202 So. 3d 1, 8 (Fla. 2016), "lewd conduct" is naturally cabined to gross indecency of a sexual nature.

The majority nevertheless thought the phrase must mean "something different" because otherwise "lewd conduct" would be rendered "mere surplusage." Op. 46. But as Judge Tjoflat noted, "lewd conduct" is a "catchall," Diss. 22–23, part of a common "belt-and-suspenders approach" to legislation, Diss. 18–19. Non-superfluous meanings of "lewd conduct" are also easy enough to imagine. Lewd conduct could include, for example, a dance routine performed by a scantily clad (but not nude) performer to elicit sexual arousal. With sufficient suggestiveness, such conduct could become obscene for children of a tender age.

Next, the majority declared "lewd conduct" to have "no 'legitimate sweep'" for purposes of First Amendment overbreadth, because "the rest of the Act's prohibitions cover the bulk of content that can be deemed obscene under *Miller*." Op. 77 n.17; *see Moody*, 603 U.S. at 723 (for a statute to be overbroad, "a substantial number of [its] applications [must be] unconstitutional, judged in relation to the statute's plainly legitimate sweep"). The majority effectively voided the many applications in which "lewd conduct" could rise to the level of obscenity, just because those applications happened already to be covered by other parts of the statute. By discounting this vast and "plainly legitimate sweep," the majority gave itself license to presume that the illegitimate applications of "lewd conduct" overwhelmed the legitimate ones, rendering the phrase facially overbroad.

No authority supports this strange overbreadth alchemy, in which legitimate but overlapping applications of different provisions in a statute collide like matter and antimatter and cease to exist. The majority should have included in the "lewd conduct" provision's plainly legitimate sweep the many applications of "lewd conduct" that are indisputably constitutional, comprising at minimum the overlapping applications covered

by the other categories of sexually explicit conduct the majority conceded were specifically defined in the Act.

Furthermore, even assuming the overbreadth of "lewd conduct" by itself, one problematic provision does not make an entire statute overbroad. To be overbroad, all the statute's unconstitutional applications would have to substantially outweigh its plainly legitimate sweep. And before conducting that analysis, a court would first have to consider whether the problematic provision could be severed from the remainder of the statute. The majority acknowledged this possibility, Op. 61, but sidestepped it by training its attention on the Act's use of an age-variable *Miller* test that gauges obscenity by the age of the child who must be excluded from an "adult live performance." *See Ginsberg v. New York*, 390 U.S. 629, 638 (1968) (approving statute that "defin[ed] obscenity on the basis of its appeal to minors under 17"); *Am. Booksellers v. Webb*, 919 F.2d 1493, 1501 (11th Cir. 1990) (similar). Such narrow tailoring should only have enhanced the Act's constitutionality—some courts indeed have faulted age-bifurcated obscenity standards for treating children of all ages alike, *see ACLU v. Ashcroft*, 322 F.3d 240, 253–54 (3d Cir. 2003)— yet the majority deemed it a vice. Even while proposing that juries may

distinguish content obscene for 18-year-olds from content obscene for 17-year-olds, the majority thought it too much to ask a jury to assess what is obscene for a 17-year-old versus a 16-year-old or a 7-year-old versus a 6-year-old. Op. 61–75.

The majority effectively created a rule whereby obscenity for all children, including toddlers, must be determined by what is appropriate for a 17-year-old, unless the legislature "wishes to describe in detail which depictions it considers obscene for which ages." Op. 73. For a legislature seeking to ensure full coverage of obscene depictions, this is a virtually impossible task. The full Court's intervention is needed.

## III. The majority's affirmance of universal relief contravenes precedents of this Court and the Supreme Court, widens an existing circuit split, and presents a question of exceptional importance.

Under "the rules of equity" that constrain "a federal court's authority to fashion equitable relief," a court "may not issue an equitable remedy more burdensome to the defendant than necessary to redress the plaintiff's injuries." *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring, joined by Thomas & Alito, JJ.) (citing *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999)); *see also Georgia*, 46 F.4th at 1303. Yet the panel majority upheld a

preliminary injunction barring enforcement of the Act throughout the State and against any entity. This was justified, the majority said, because First Amendment overbreadth is special, Op. 76, and because the injunction was merely statewide, Op. 78–79. Both justifications contravene precedent.

Neither the Supreme Court nor this Court has blessed injunctions protecting everyone whose speech is supposedly chilled by a law. That reasoning "conflates the merits of a legal claim with the scope of the remedy for that claim." *HM Florida-ORL, LLC v. Gov'r of Fla.*, No. 23-cv-950, 2023 WL 6785071, at *5 (11th Cir. Oct. 11, 2023) (Brasher, J., dissenting). Overbreadth doctrine expands the arguments a plaintiff can raise on the merits, so that even when a statute is constitutional as applied to the plaintiff he can obtain relief for his injury in fact by establishing that the statute is unconstitutional as applied to others. *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999). It does not expand a court's equitable powers and allow it to award relief to nonparties.

The Supreme Court has thus repeatedly ordered party-specific relief in overbreadth cases. In *Doran v. Salem Inn, Inc.*, the Court affirmed a preliminary injunction preventing enforcement of a topless-dancing

ordinance against two plaintiffs, but allowed enforcement against a third plaintiff whose state prosecution could not be enjoined due to *Younger* abstention. 422 U.S. 922, 929 (1975). The Court explained that "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs." *Id.* at 931. As a consequence, "the State is free to prosecute others who may violate the statute"—even a statute that is overbroad. *Id.*; *see also Thornhill v. Alabama*, 310 U.S. 88, 91, 97, 106 (1940) (holding statute prohibiting loitering and picketing facially unconstitutional but only reversing conviction of defendant); *United States v. Stevens,* 559 U.S. 460, 464, 473, 481–82 (2010) (similar).

This Court has likewise respected traditional rules of equity in overbreadth cases. It recently stayed a statewide injunction entered on First Amendment overbreadth grounds. The district court had enjoined a Florida law that precluded officials from lobbying while holding public office. *See Garcia v. Stillman*, 661 F. Supp. 3d 1168, 1174–75, 1186 (S.D. Fla. 2023). The injunction had applied statewide, *see id.* at 1186, and the district court had refused to grant a stay as to nonparties. *Garcia v. Stillman*, No. 22-cv-24156, 2023 WL 3478450, at *2 (S.D. Fla. May 16, 2023).

But a unanimous panel of this Court reversed, staying the injunction to the extent it applied to nonparties. *Garcia v. Exec. Dir., Fla. Comm'n on Ethics*, No. 23-10872 (11th Cir. June 5, 2023), ECF No. 33, at 2–3.

The majority here cited overbreadth cases where this Court has "affirmed injunctions preventing enforcement . . . against nonparties as well as parties." Op. 76. But in none of these cases, which came during the "decades of tacit acquiescence in universal . . . remedies," *Georgia*, 46 F.4th at 1306, did the defendant challenge the nonparty scope of the injunction. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925). These decisions thus constitute "drive-by" rulings at best. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511 (2006).

Nor does it matter whether a state or federal law is at issue. Op. 78–79. Once an injunction extends beyond the needs of the parties, it is improper. As this Court pointed out in *Garcia*, "[n]either the need to protect third parties, nor the statewide as opposed to nationwide coverage of the injunction, warrants its broad application" to nonparties. No. 23-10872, ECF No. 33 at 2–3; *see also Labrador*, 144 S. Ct. at 926 (Gorsuch,

J., concurring) (disapproving of courts "issuing equitable orders that . . . govern an entire State or even the whole Nation"). Other recent decisions from this Court are in accord. *Florida v. Department of Health & Human Services* disapproved a nationwide injunction of a federal rule because "the [district] court could have provided complete relief to the plaintiffs with an injunction limited in scope." 19 F.4th 1271, 1282 (11th Cir. 2021) (Rosenbaum, J.). And *Georgia* observed: "The Supreme Court has cautioned that remedies should be . . . no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." 46 F.4th at 1303; *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006); *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994); *U.S. Dep't of Def. v. Meinhold*, 510 U.S. 939, 939 (1993); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 163 (2010); *Scott v. Donald*, 165 U.S. 58, 115–17 (1897).[3]

---

[3] *Georgia* has already put this Court on one side of an existing circuit split, so it goes without saying that under Federal Rule of Appellate Procedure 40(b)(2), the panel opinion conflicts with those of other circuits. *Compare Roe v. U.S. Dep't of Def.*, 947 F.3d 207, 232 (4th Cir. 2020); *City of Chicago v. Barr*, 961 F.3d 882, 916 (7th Cir. 2020); *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019) (approving universal injunctions), *with Brown v. Trs. of Bos. Univ.*, 891 F.2d 337, 361 (1st Cir. 1989); *Louisiana v. Becerra*, 20 F.4th 260, 263–64 (5th Cir. 2021); *L.W. v.*

Here, there is no question that a limited injunction would afford HM full relief. It is beyond this Court's power to extend relief to "nonparties with similar interests," who have their own avenues to protect their rights, including "class certification under Rule 23, joinder and intervention in an existing lawsuit, or even filing a new lawsuit of their own." *Georgia*, 46 F.4th at 1303. Universal relief allows plaintiffs to "mount[] gratuitous wholesale attacks upon state and federal laws" in lieu of seeking as-applied relief. *Fox*, 492 U.S. at 485. It must be discouraged.

---

*Skrmetti*, 73 F.4th 408, 415 (6th Cir. 2023); *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (disapproving).

## CONCLUSION

The Court should grant rehearing or rehearing en banc.

Respectfully submitted,

JAMES UTHMEIER
  *Attorney General*

JEFFREY PAUL DeSOUSA
  *Acting Solicitor General*

  /s/ *Nathan A. Forrester*
NATHAN A. FORRESTER
  *Chief Deputy Solicitor General*
ALLEN L. HUANG
DARRICK MONSON
  *Deputy Solicitors General*
WILLIAM H. STAFFORD III
  *Special Counsel*
OFFICE OF THE ATTORNEY GENERAL
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300 (phone)
(850) 414-2672 (fax)
nathan.forrester@myfloridalegal.com

June 3, 2025                *Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with Federal Rule of Appellate Procedure 27(d)(2)(A), because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,861 words.

2.    This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27, Federal Rule of Appellate Procedure 32(a)(5), and Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font using Microsoft Word.

_/s/ Nathan A. Forrester_
Nathan A. Forrester
Chief Deputy Solicitor General

**CERTIFICATE OF SERVICE**

I certify that on June 3, 2025, I electronically filed this Motion for Stay Pending Appeal with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Nathan A. Forrester*
Nathan A. Forrester
Chief Deputy Solicitor General