# In the United State Court of Appeals
# For the Eleventh Circuit

HM FLORIDA-ORL, LLC,

*Plaintiff-Appellee*

v.

MELANIE GRIFFIN, Secretary,
Department of Business and
Professional Regulation,
State of Florida

*Defendant-Appellant.*

## RESPONSE TO PETITION FOR REHEARING EN BANC

On Appeal from the United States District Court
For the Middle District of Florida
Case No. 6:23-cv-950-GAP-LHP

Melissa J. Stewart, Esq.
Glassman, Wyatt, Tuttle & Cox, P.C.
26 N. Second Street
Memphis, TN 38103
(901) 527-4673
mstewart@gwtclaw.com

Gary S. Israel, Esq
121 S. Orange Ave.
Suite 1500
Orlando, Florida 32801
(407) 210-3834
attorneyisrael@hotmail.com

*Counsel for Plaintiff-Appellee*

July 11, 2025

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**

Plaintiff-Appellee HM Florida-ORL, LLC is not a publicly owned corporation, nor is it owned by any parent corporation with financial interest in the outcome of this case.

Plaintiff-Appellee certifies that, to the best of its knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26. 1-5:

1. America First Legal Foundation

2. Costello, David M.

3. Department of Business and Professional Regulation, State of Florida

4. DeSantis, Ron

5. DeSousa, Jeffrey Paul

6. Edgington, Craig A.

7. Forrester, Nathan A.

8. Griffin, Melanie

9. Huang, Allen L.

10. HM Florida-ORL, LLC

11. Israel, Gary S.

12. Mitchell, Jonathan F.

13. Monson, Darrick

14. Moody, Ashley

15. Presnell, Hon. Gregory A.

16. Price, Hon. Leslie Hoffman

17. Stafford, William H.

18. Stewart, Melissa J.

19. Teeter, Shelby N.

20. Timmons, Brice M.

21. Uthmeier, James

22. Whitaker, Henry Charles

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iv

INTRODUCTION .................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..............................1

I.    Background.................................................................1

II.   Procedural History.................................................4

ARGUMENT.................................................................6

I.    The Majority Applied Well-Established Eleventh Circuit and Supreme Court Precedent and Correctly Held that HM Has Standing .........................7

II.   The Majority Applied Well-Established Eleventh Circuit and Supreme Court Precedent and Correctly Held that the Act is Overbroad....................11

III.  The Majority Applied Well-Established Eleventh Circuit and Supreme Court Precedent and Correctly Held that Statewide Relief is Proper ...........14

CONCLUSION.................................................................17

CERTIFICATE OF COMPLIANCE ..................................................18

CERTIFICATE OF SERVICE ..........................................................19

# TABLE OF AUTHORITIES

## Cases

*FF Cosmetics Fl, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1303-04 (11th Cir. 2017) ................................................................15

*Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 217 L. Ed. 2d 277 (2023) .............6

*Am. Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990) ............................. 11, 12

*Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ............8, 9

*Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) ...................................................15

*City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) ................................................................4

*Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926) ....................................5

*Ga. Latino All. For Hum. Rts. V. Governor of Ga.*, 691 F.3d 1250, 1257 (11th Cir. 2012) ................................................................8

*Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 217 L. Ed. 2d 277 (2023) ..... 14, 15

*Harrell v. The Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010) ......................... 8, 10

*HM Fla.-Orl, LLC v. Governor of Fla.*, No. 23-12160, 2023 WL 6785071 (11th Cir. Oct. 11, 2023) ................................................................ 5, 14

*HM Fla.-ORL, LLC v. Griffin*, No. 6:23-CV-950-GAP-LHP, 2023 WL 11257409 (M.D. Fla. July 19, 2023) ................................................................14

*Miller v. California*, 413 U.S. 15 (1973) ................................................................11

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) ....................8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014)................................8

*Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025)........15

*Virginia v. Hicks*, 539 U.S. 113, 119 (2005) ...................................................... 5, 14

*Wollshlaeger v. Governor, Fla.*, 848 F.3d 1293, 1305 (11th Cir. 2018 (en banc) .....8

**Statutes**

Fla. Laws Ch. 2023-94 ...............................................................................................1

Fla. Stat. § 827.11 .................................................................................................1, 2

Fla. Stat. § 509.261 ...................................................................................................2

Fla. Stat. § 561.29 .....................................................................................................2

**Rules**

11th Cir. I.O.P. 40-6 ......................................................................................... 1, 6, 7

## INTRODUCTION

Rehearing en banc is not warranted. The panel's decision applies well-established standing principles and First Amendment jurisprudence to the issues raised on appeal. It commits no "precedent-setting error," much less an error of "exceptional importance." 11th Cir. I.O.P. 40-6. And it does not conflict with Supreme Court or Eleventh Circuit precedent. The Secretary's petition is a restatement of arguments already briefed for and considered by the panel. The Court should deny the petition for rehearing en banc.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.     Background

On May 17, 2023, Florida Governor Ron DeSantis signed Senate Bill 1438 into law. *See* 2023 Fla. Laws Ch. 2023-94. Along with amending three existing laws, S.B. 1438 created a new statute – Fla. Stat. § 827.11 ("the Act") – which prohibits any person from "knowingly" admitting a child to what it terms an "adult live performance." *Id.* Violation of the statute authorizes the Florida Department of Business and Professional Regulation ("DBPR") to impose fines and revoke or suspend the operating and/or liquor license of any public lodging, food service establishment, or other licensee. Fla. Stat. §§ 509.261(10) 561.29(1). Additionally, any person who violates § 827.11 may be prosecuted and subject to punishment as a first-degree misdemeanor. The Act defines an "adult live performance" as:

[A]ny show, exhibition, or other presentation in front of a live audience which, in whole or in part, depicts or simulates nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 827.001, lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts when it:

> 1. Predominantly appeals to a prurient, shameful, or morbid interest;
>
> 2. Is patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present; and
>
> 3. Taken as a whole, is without serious literary, artistic, political, or scientific value for the age of the child present.

§ 827.11(1)(a).

Plaintiff-Appellee HM Florida-ORL, LLC ("HM") is a for-profit business operating Hamburger Mary's Restaurant and Bar in Orlando, Florida. HM "frequently presents drag show performances, comedy sketches, and dancing" at its venue. DE30 at PageID 432. Drag performances are a core element of HM's business model. The content of HM's drag performances, comedy sketches, and dances "can range from a performer in a floor-length gown lip-syncing to Celine Dion songs and making G-rated puns, to the Rocky Horror Picture Show, to sexual innuendo and the kind of dancing one could expect to see at a Taylor Swift or Miley Cyrus concert." DE1 at PageID 7. HM is and has always marketed itself as a family restaurant. As such HM's drag performances "have [traditionally] been open to all ages." DE1 at PageID 19. Parents and grandparents often attend shows with their children, and

HM leaves it up to parents to determine whether a particular show is appropriate for the age of their own child.

*One* of HM's *many* drag performances is tailored to be appropriate for even the youngest possible audience member: Sunday Broadway Drag Brunch. In its First Verified Complaint, HM described its Sunday Broadway Drag Brunches, and *only* these performances*,* as "a wholesome form of art and entertainment" that can be "enjoyed by all." DE1 at PageID 8. It further stated that its Sunday Broadway Drag Brunch has "no lewd activity, sexually explicitly shows, disorderly conduct, public exposure, obscene exhibition, or anything inappropriate for a child to see." DE1 at PageID 6. HM's Sunday Broadway Drag Brunch is the most family-friendly of all of its performances. Even still, HM fears that all of its performances, including its Sunday Broadway Drag Brunch, "could be construed to fall within the Act's purview of proscribed conduct[.]" DE30 at PageID 439-440.

In its Verified Complaint, HM raised concerns that by the Act "[r]equiring Plaintiff to consider the age of the child, then determine what the prevailing standards are in the adult community, then determine what is suitable material or conduct for the age of the child," HM, and other Floridians, "will be forced to guess at the bottom end of the range of ages of children to which the statute applies." DE1 at PageID 12. Upon passage of the Act, "Plaintiff advised its customers that children would no longer be permitted to attend its drag shows." DE30 at PageID 440 (citing

DE1 at PageID 18). The newly imposed age restrictions resulted in the immediate cancellation of "20% of [HM's] bookings for its May 21, 2023, show and for future bookings." DE1 at PageID 18. Following the district court's order granting a preliminary injunction, HM returned to its previous policies. However, its business has suffered lasting injury, because while its performances do not pose any threat of harm to minors, they likely still run afoul of the Act.

## II.    Procedural History

HM brought this suit, challenging the Act as a facial violation of the First Amendment and the Fourteenth Amendment Due Process Clause. DE1. The district court granted HM's motion for a preliminary injunction, ruling in part that HM had shown a substantial likelihood of success on the merits of its claims. DE30 at PageID 443-451. The district court ruled that Fla. Stat. § 827.11 is "content-based on its face," because the Act "applies to particular speech because of the topic discussed or the idea or message expressed." DE30 at PageID 443 (quoting *City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022)). The district court found that the legislature did not use the least restrictive means of achieving its purported goal of protecting children from explicit content. DE30 at PageID 444-448. Additionally, the district court found that the Act is likely unconstitutionally vague, because it fails to define key terms such as "lewd conduct" leaving both citizens and law enforcement to "necessarily guess at [their] meaning." DE30 at

PageID 449 (citing *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926)). Finally, the district court determined that the Act is likely overbroad because it is "dangerously susceptible to standardless, overbroad enforcement which could sweep up substantial protected speech[.]" DE30 at PageID 451.

The Secretary asked the district court for a partial stay of the preliminary injunction, so that it could enforce the Act against everyone in Florida except for HM. *See* DE33. The district court denied the motion for a partial stay, reasoning that where a statute is found to be overbroad, a preliminary injunction prohibiting all enforcement is proper. DE41. The Secretary then sought a partial stay of the injunction pending appeal from this Court. A divided panel denied the motion for partial stay, finding that the district court had not abused its discretion when it enjoined the Secretary from all enforcement of the statute. *HM Fla.-Orl, LLC v. Governor of Fla.*, No. 23-12160, 2023 WL 6785071 (11th Cir. Oct. 11, 2023). The panel majority emphasized the district court's finding that the Act is likely overbroad and determined that "a successful overbreadth challenge 'suffices to invalidate *all* enforcement'" of the Act. Doc. 26 at 7 (quoting *Virginia v. Hicks*, 539 U.S. 113, 119 (2005)).

After this Court denied the Secretary's motion for a partial stay of the injunction pending appeal, the Secretary filed an application with the Supreme Court of the United States seeking a partial stay on the same grounds. The Supreme Court

denied the Secretary's application, with Justice Kavanaugh, joined by Justice Barrett, noting that the First Amendment "presents its own doctrinal complexities about the scope of relief." *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 217 L. Ed. 2d 277 (2023) (statement of Kavanaugh, J.).

The parties briefed and argued the Secretary's appeal on the merits of the preliminary injunction before this Court. On May 13, 2025, a 2-1 panel majority affirmed the district court's order enjoining enforcement of the Act. In a comprehensive, 81-page opinion, the majority determined that HM has standing to bring this suit, because vague, undefined terms such as "lewd conduct" make the Act "potentially inclusive of even Hamburger Mary's 'family-friendly' drag performances." Op. 13. The majority also found that the Act's vague language, age-variable standards, and strict-liability offense restrict speech that is protected even as to minors and render the Act unconstitutionally overbroad.

The Secretary filed her Petition for Rehearing En Banc, and this Court ordered HM to respond.

## ARGUMENT

Rehearing en banc is "an extraordinary procedure" meant to address "a precedent-setting error of exceptional importance in an appeal." 11th Cir. I.O.P. 40-6. The purpose is not to give the losing party a re-do, but "to bring to the attention of the entire court a panel opinion that is allegedly in direct conflict with precedent

of the Supreme Court or of this circuit." *Id.* Rehearing en banc is not appropriate for "[a]lleged errors in a panel's determination of state law, or in the facts of the case (including sufficiency of the evidence), or error asserted in the panel's misapplication of correct precedent to the facts of the case[.]" *Id.*

The Secretary offers three justifications for rehearing en banc, but she fails to identify any issue that warrants rehearing under this Court's rules. The majority's opinion comprises a meticulous application of well-established First Amendment and standing precedents from both this Circuit and the Supreme Court. The Secretary points to no conflict between the majority's opinion and Eleventh Circuit or Supreme Court precedent. Nor does she identify any "precedent-setting error." 11th Cir. I.O.P. 40-6. Instead, the Secretary reiterates the same arguments already considered by the panel in hopes that the Court will give her a do-over. But a party's dissatisfaction with the outcome of an appeal does not warrant rehearing. This Court should deny the petition.

## I. The Majority Applied Well-Established Eleventh Circuit and Supreme Court Precedent and Correctly Held That HM Has Standing.

The majority's standing analysis begins by identifying the controlling precedents from both the Supreme Court and this Circuit. "A plaintiff bringing a pre-enforcement challenge to an enacted law must show it intends to 'engage in a course of conduct' that the Constitution arguably protects but a law prohibits or otherwise

unconstitutionally burdens, and 'a credible threat of prosecution' exists under that law." Op. 9 (quoting *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Nothing in Supreme Court precedent "requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." Op. 9 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014)). The majority notes that this Court applies the injury-in-fact requirement "most loosely when First Amendment rights" are at stake. Op. 9 (quoting *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010). Self-censorship can establish an injury for the purpose of standing, if the challenged law "would cause a reasonable would-be speaker to 'self-censor.'" Op. 10 (quoting *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) (quoting *Ga. Latino All. For Hum. Rts. V. Governor of Ga.*, 691 F.3d 1250, 1257 (11th Cir. 2012), and *Wollslaeger v. Governor, Fla.*, 848 F.3d 1293, 1305 (11th Cir. 2018) (en banc)). If the challenged statute "was recently enacted . . . an intent to enforce the rule may be inferred." Op. 10 (quoting *Harrell*, 608 F.3d at 1257). And First Amendment vagueness challenges, the majority notes, have their own standards, where in a plaintiff must show "(1) he seriously wishes to [speak]; (2) such [speech] would arguably be affected by the rules, but the rules are *at least arguably vague* as they apply to him[;] and (3) there is at least minimal probability that the rules will be enforced, if they are violated." Op. 11 (quoting *Harrell*, 608 F.3d at 1254).

8

The majority's application of these precedents is as exhaustive as its recitation of them. The majority determined that HM has standing based on four things: "the facts Hamburger Mary's alleged in its verified complaint, the vague text of the statute, Florida officials' prior enforcement actions and statements about drag shows, and the lenient standards for standing in First-Amendment suits." Op. 15. The opinion explains in detail how each of these things gives HM standing to challenge the Act.

Still, the Secretary claims that the majority's standing analysis "threatens to upend pre-enforcement standing doctrine in this Circuit." Pet. at 15. As the Secretary does not cite a single authority from this Court regarding standing, it is unclear what Eleventh Circuit doctrine the majority's opinion "threatens to upend." Pet. at 6. The Secretary makes three arguments as to why the majority's standing analysis warrants rehearing but fails to identify either a precedent-setting error or a conflict with existing law.

*First*, the Secretary declares that "HM has shown neither that it wishes to engage in conduct 'arguably . . . proscribed' by the Act nor that it faces a 'credible threat of prosecution.'" Pet. at 16. This "should have ended the matter." Pet. at 16 (quoting *Babbit*, 442 U.S. at 298). While these conclusory statements summarize the Secretary's view of the issue, they neither engage with majority's reasoning nor explain how that reasoning warrants rehearing.

*Second*, the Secretary argues that the majority "deemed HM to have standing based on the Act's coverage of 'lewd conduct'" Pet. at 16. The Secretary takes umbrage with the majority's finding that DBPR "might" consider HM's shows lewd under the meaning of the Act. Pet. at 16. But "might" is all that the law requires; HM need only show that the Act is "at least arguably vague" and that there is "at least a minimal probability" that the Act will be enforced against HM. Op. 11; *Harrell*, 608 F.3d at 1254. The majority's analysis and conclusions are squarely within the ambit of this Circuit's precedent.

*Third*, the Secretary contends that the majority "collapsed the 'arguably proscribed' requirement into the 'credible threat' requirement by concluding that HM's conduct was arguably proscribed as long as DBPR 'might' take enforcement action against it." Pet. at 7. This argument is curious, as the opinion undertakes a detailed analysis of whether HM's speech is "arguably proscribed" by the Act, before holding that "the Act's vague terms like 'depicts . . . lewd conduct' and 'value for the age of the child present' make the law's scope ambiguous and potentially inclusive of even Hamburger Mary's 'family-friendly' drag performances." Op. 12-13. This finding and the supporting analysis precede the majority's distinct consideration of whether HM faces a "credible threat of enforcement." Op. 14.

## II. The Majority Applied Well-Established Eleventh Circuit and Supreme Court Precedent and Correctly Held that the Act is Overbroad

On the merits, the Secretary makes the same arguments she made before the panel: the term "lewd conduct" is not vague (Appellant Br. at 56); the Act is not overbroad (Appellant Br. at 38); and the Act's age-variable *Miller* test narrows, rather than broadens, the scope of the Act (Appellant Br. at 27-28). Pet. at 9-14. The petition claims that because the majority determined that the Act's age-variable *Miller* standard is overbroad, it is now "nearly impossible for a state to regulate the exposure of children to age-inappropriate performances." Pet. at 14.

Many states have laws which restrict minors' access to sexually explicit content that, while protected speech for adults, is not appropriate for minors. These laws often adapt the standard for obscenity in *Miller v. California*, 413 U.S. 15 (1973) to apply to minors. This Court considered one such statute in *Am. Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990). The Georgia statute at issue in *Webb* regulated the display and sale of explicit materials deemed "harmful to minors." The statute defined "harmful to minors" by adapting the *Miller* standard to include materials that lack serious value "for minors." *Id.* at 1497. Plaintiffs challenging the law argued that this adapted standard was unconstitutionally overbroad, because "it does not accommodate the differences between older and younger minors in maturity levels and capacity to comprehend literary themes." *Id.* at 1504. This Court,

however, construed the statute to mean that "if any reasonable minor, including a seventeen-year-old, would find serious value, the material is not 'harmful to minors.'" *Id*. This construction "dramatically decreases the amount of material actually covered by the [law] and the indirect burden suffered by adults as a result." *Id.* at 1505. Read this way, the statute's adapted *Miller* standard was not unconstitutionally overbroad. *Id.*

The Florida legislature took a different approach. Here, the Act adapts the *Miller* standards for what is 'patently offensive' and what has 'serious value' to be 'for the age of the child present.'" Op. 42. The legality of any given performance is determined by the specific ages of the minors who are physically present. The Secretary argues that "such narrow tailoring should only have enhanced the Act's constitutionality," but that "the majority thought it too much to ask a jury to assess what is obscene for a 17-year-old versus a 16-year-old or a 7-year-old." Pet. at 13-14. But majority's concern is not with juries, but the chilling effect this age-variable standard will have on speech.

"On paper, the Act is the Goldilocks of speech regulation, ensuring each child can access only that speech that is 'just right' for their age." Op. 64. But the age-variable standard creates new overbreadth issues. Op. 64. The Act provides no guidance as to what kinds of performances might be appropriate for what ages; nor was counsel for the Secretary able to provide such guidance at oral argument, even

when pressed. Op. 65. The burden is on the speaker to guess at what the legislature and law enforcement might consider "harmful" for children of varying ages. The Act requires that speakers "make judgments about what is appropriate for children year-by-year (or maybe month-by-month, week-by-week, or day-by-day—the Act is not clear.)" Op. 65. This uncertainty "create[s] ample room for discriminatory enforcement." Op. 65.

The majority was clear that it does not decide "whether, in principle, some 'age-variable' obscenity standards can pass constitutional muster." Op. 73. Its holding is explicitly limited to the age-variable standard as employed by the Act. "If Florida wishes to describe in detail which depictions it considers obscene for which ages, it is welcome to do so." Op. 73. This, the Secretary claims, would be "a virtually impossible task" for the legislature.[1] The Secretary lays bare the absurdity of her argument: she requires of Florida's citizens what she claims would be "virtually impossible" for its lawmakers. Pet. at 23. The First Amendment "demands precision when the government regulates speech." Op. 31. Florida's legislature may

---

[1] "That contrasts mightily with other instances when Florida has identified content it deems appropriate for children based on their age: grade-level educational standards. Take Florida's grade-by-grade standards for K–12 education. They're extraordinarily detailed, running to 229 pages—and that's just for math class. Fla. State Bd. of Educ., Florida's B.E.S.T. Standards: Mathematics (2020), https://cpalmsmediaprod.blob.core.windows.net/uploads/docs/standards/best/ma/mathbeststandardsfinal.pdf [https://perma.cc/BSZ5-4727]." Op. 65-66.

not shift that burden to its citizens whenever it deems the task too difficult to undertake for itself.

### III. The Majority Applied Well-Established Eleventh Circuit and Supreme Court Precedent and Correctly Held that Statewide Relief is Proper.

The Secretary's arguments regarding the scope of relief are nothing new. The same arguments have been rejected by the district court, by the Supreme Court, and by this Court twice. *See HM Fla.-ORL, LLC v. Griffin*, No. 6:23-CV-950-GAP-LHP, 2023 WL 11257409 (M.D. Fla. July 19, 2023); *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 217 L. Ed. 2d 277 (2023); *HM Fla.-Orl, LLC v. Governor of Fla.*, No. 23-12160, 2023 WL 6785071 (11th Cir. Oct. 11, 2023); Op. 75-81. The Secretary claims that neither this Court nor the Supreme Court has "blessed injunctions protecting everyone whose speech is supposedly chilled by a law." The Secretary is mistaken. "The Supreme Court has long recognized an 'expansive remedy' for First Amendment overbreadth challenges for the same reasons behind the overbreadth doctrine: a fear that the threat of enforcement will chill protected speech." Op. 76 (citing *Hicks*, 539 U.S. at 119). It is well-settled in both Supreme Court and 11th Circuit precedent that a successful facial overbreadth challenge "suffices to invalidate *all* enforcement of th[e] law 'until and unless a limiting construction or partial invalidation so narrows it as to remove the threat of deterrence to constitutionally protected expression.'" *Id.* (emphasis in original) (quoting

*Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)); *See, e.g., FF Cosmetics Fl, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1303-04 (11th Cir. 2017) (relying on *Broadrick* and explaining that enforcement of the overbroad ordinance was "totally forbidden" until it was judicially narrowed or partially invalidated).

The Secretary also asserts that the Supreme Court's recent holding in *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) "closes the door" on *Broadrick*'s exception. But a six-Justice majority has already rejected the Secretary's scope-of-relief arguments and distinguished them from *CASA. Griffin v. HM Florida-ORL,* 144 S. Ct. 1, 217 L. Ed. 2d 277 (2023). Justice Kavanaugh, in a written statement, explained, that "the context of a First Amendment overbreadth challenge" involves "its own doctrinal complexities about the scope of relief." *Id.* (statement of Kavanaugh, J.) Justice Kavanaugh's statement was joined by Justice Barrett, who authored the majority opinion in *CASA*. That opinion does not mention the First Amendment or discuss the overbreadth doctrine – precisely because of the unique doctrinal issues that arise in this context.

It would defy logic to permit litigants to challenge a statute "because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression," but then limit relief exclusively to the parties before the court. *Broadrick*, 413 U.S. at 610. HM suffers harm because its own speech is threatened by the Act, but that is

not the *only* cause of harm. HM also suffers harm because the speech of nonparties is threatened by the Act. HM is harmed because, as the majority explains, the First Amendment rights of its patrons are threatened by the Act. "Every performance with an age cutoff somewhere between zero and eighteen would need to check IDs at the door." Op. 73. Most minors who are too young to drive do not have a photo ID, but "would need to obtain and present proof of age to access even performances that are constitutionally protected speech for their age." Op. 73. HM is also harmed if its performers – many of whom perform at multiple venues in Florida – are prosecuted under the Act for admitting a minor to another establishment.

The overbreadth doctrine addresses harm to plaintiffs caused by threats to the First Amendment rights of parties not before the court. The chilling effect on the speech of third parties is undeniably a source of the injuries suffered by HM; limiting the scope of the injunction to HM alone would not afford HM anywhere near full relief. These are exactly the "doctrinal complexities" that led six Justices to reject the Secretary's application for a partial stay and that distinguish this case from *CASA*. Yet the Secretary asks this Court to read *CASA* as a reversal of *Broadrick*'s longstanding exception for First Amendment overbreadth cases. This Court should decline to do so.

## CONCLUSION

This Court should deny the Secretary's petition for rehearing en banc.

Respectfully submitted,

*/s/ Melissa J. Stewart*
Melissa J. Stewart TN# 40638
Glassman, Wyatt, Tuttle & Cox, P.C.
26 N. Second Street
Memphis, TN 38103
(901) 527-4673
mstewart@gwtclaw.com
*Attorney for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the Federal Rule of Appellate Procedure 40(d)(3) because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,886 words

2.  This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27, Federal Rule of Appellate Procedure 32(a)(5), and Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface in 14-point Times New Roman font using Microsoft Word.

*/s/ Melissa J. Stewart*
Melissa J. Stewart
*Counsel for Plaintiff-Appellee*

## CERTIFICATE OF SERVICE

I certify that on July 11, 2025, I electronically filed this Response with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

  */s/ Melissa J. Stewart*
Melissa J. Stewart
*Counsel for Plaintiff-Appellee*
