# In the United States Court of Appeals for the Eleventh Circuit

---

HM FLORIDA-ORL, LLC,

*Plaintiff-Appellee,*

v.

MELANIE GRIFFIN, Secretary,
Department of Business and
Professional Regulation,
State of Florida,

*Defendant-Appellant.*

---

### APPELLANT'S RENEWED MOTION FOR STAY PENDING APPEAL

---

On Appeal from the United States District Court
for the Middle District of Florida
Case No. 6:23-cv-950-GAP-LHP

---

JAMES UTHMEIER
*Attorney General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300 (phone)
(850) 414-2672 (fax)
nathan.forrester@myfloridalegal.com

July 31, 2025

JEFFREY PAUL DESOUSA
*Acting Solicitor General*
NATHAN A. FORRESTER
*Chief Deputy Solicitor General*
ALLEN L. HUANG
*Deputy Solicitor General*

*Counsel for Defendant-Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant certifies that, to the best of her knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-5:

1.    America First Legal Foundation

2.    Costello, David M.

3.    Department of Business and Professional Regulation, State of Florida

4.    DeSantis, Ron

5.    DeSousa, Jeffrey Paul

6.    Edgington, Craig A.

7.    Forrester, Nathan A.

8.    Griffin, Melanie

9.    Huang, Allen L.

10.    HM Florida-ORL, LLC

11.    Israel, Gary S.

12.    Mitchell, Jonathan

13.   Monson, Darrick

14.   Moody, Ashley

15.   Presnell, Hon. Gregory A.

16.   Price, Hon. Leslie Hoffman

17.   Stafford, William H.

18.   Stewart, Melissa

19.   Teeter, Shelby N.

20.   Timmons, Brice M.

21.   Uthmeier, James

22.   Whitaker, Henry Charles

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ............................................................................. 1

BACKGROUND ............................................................................... 2

STANDARD OF REVIEW ................................................................. 5

ARGUMENT .................................................................................... 6

I.    The State is likely to succeed in narrowing the scope of the
      injunction to HM. ................................................................. 6

      A.    *CASA* confirms that Congress has not given federal
            courts the power to grant universal relief. ....................... 6

      B.    *CASA* provides no overbreadth exception to its
            prohibition on universal injunctions. .............................. 8

II.   The remaining stay factors favor the State. ......................... 12

CONCLUSION ............................................................................... 16

CERTIFICATE OF COMPLIANCE ................................................. 17

CERTIFICATE OF SERVICE .......................................................... 18

# TABLE OF AUTHORITIES

## Cases

*American Booksellers v. Webb*,
  919 F.2d 1493 (11th Cir. 1990) ............................................................2

*Brakebill v. Jaeger*,
  905 F.3d 553 (8th Cir. 2018) ...............................................................5

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ...........................................................................11

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ...........................................................................13

*Doran v. Salem Inn, Inc.*,
  422 U.S. 922 (1975) ..................................................................6, 9–10

*FF Cosmetics Fl, Inc. v. City of Miami Beach*,
  866 F.3d 1290 (11th Cir. 2017) ..........................................................11

*Georgia v. President of the United States*,
  46 F.4th 1283 (11th Cir. 2022) ....................................................11, 13

*Ginsberg v. New York*,
  390 U.S. 629 (1968) .............................................................................2

*Griffin v. HM Florida-ORL, LLC*,
  144 S. Ct. 1 (2023) .......................................................................3, 11

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) .............................................................................6

*Hand v. Scott*,
  888 F.3d 1206 (11th Cir. 2018) ............................................................5

*HM Florida-ORL, LLC v. Gov'r of Fla.*,
  137 F.4th 1207 (11th Cir. 2025) .......................................... 3

*Labrador v. Poe*,
  144 S. Ct. 921 (2024) .......................................................... 15

*Maryland v. King*,
  567 U.S. 1301 (2012) .......................................................... 13

*Robinson v. Att'y Gen. of Ala.*,
  957 F.3d 1171 (11th Cir. 2020) .......................................... 14

*Rodgers v. Bryant*,
  942 F.3d 451 (8th Cir. 2019) .............................................. 12

*Scott v. Donald*,
  165 U.S. 107 (1897) ......................................................... 4, 7

*Swain v. Junior*,
  958 F.3d 1081 (11th Cir. 2020) .......................................... 13

*Trump v. CASA, Inc.*,
  606 U.S. ___, 145 S. Ct. 2540 (June 27, 2025) ................ 2, 4, 6–7, 9–15

*United States v. National Treasury Employees Union*,
  513 U.S. 454 (1995) .......................................................... 8–9

*Zaklama v. Mount Sinai Med. Ctr.*,
  906 F.2d 645 (11th Cir. 1990) .............................................. 5

**Statutes**

Fla. Stat. § 827.11 ................................................................. 1–2

**Rules**

Fed. R. App. P. 8 ...................................................................... 5

## INTRODUCTION

Florida enacted the Protection of Children Act in 2023[1] to shield children from the harmful effects of obscene sexual performances. The Act penalizes admitting a child to an "adult live performance," Fla. Stat. § 827.11(3)–(4), which is a performance that features nudity or sexual activity and is obscene for a child of that age. *Id.* § 827.11(1)(a). It is an unremarkable law largely tracking ones blessed by the Supreme Court and this Court.

The district court nevertheless held that the Act violated the First Amendment. It issued a preliminary injunction preventing enforcement of the Act against not only Plaintiff-Appellee HM Florida-ORL, LLC ("HM"), but also any other entity in the State. The State[2] moved this Court to stay the injunction as to nonparties only, but a split panel of this Court denied the motion. Another split panel subsequently upheld the injunction on the merits, after which the State petitioned this Court for rehearing or rehearing en banc.

---

[1] Fla. Laws ch. 2023-94 (SB 1438).

[2] Defendant-Appellant is Melanie Griffin, Secretary of the Florida Department of Business and Professional Regulation, but for sake of shorthand is referred to as "the State."

While that petition was pending, the Supreme Court handed down its opinion in *Trump v. CASA, Inc.*, 606 U.S. \_\_\_, 145 S. Ct. 2540 (June 27, 2025). *CASA* confirms what the State has argued all along: that universal injunctions granting relief to nonparties exceed the equitable authority Congress has granted to federal courts. *Id*. at 2550. In light of this clarifying authority, the State renews its motion for a stay as to parties other than HM while this Court considers the rehearing petition, and if the Court grants it, while the case is reheard. Such a stay will fully protect HM's rights for the remainder of this appeal while allowing the State to enforce its duly enacted statute geared at protecting children in other establishments in the State.

## BACKGROUND

Florida's Protection of Children Act makes it a first-degree misdemeanor to "knowingly admit a child to an adult live performance," defined as a sexually explicit show that would be obscene "for the age of the child present." Fla. Stat. § 827.11(1)(a), (3)–(4). The variable-obscenity standard in the Act tracks the one approved by the Supreme Court in *Ginsberg v. New York*, 390 U.S. 629 (1968), and this Court in *American Booksellers v. Webb*, 919 F.2d 1493 (11th Cir. 1990).

HM operates a central Florida restaurant called Hamburger Mary's that features live entertainment, including drag shows. After the law's enactment, HM mounted a facial challenge to the Act. In its complaint, HM sought to enjoin most of the operative provisions of the Act, including section 827.11, on the grounds that the Act was content-based and over-broad, in violation of the First Amendment, and that it was vague, in violation of due process. DE1.[3] HM also moved for a preliminary injunction. DE6. The district court granted the motion, not just as to HM but also as to any other person or entity in the State of Florida. DE30 at 25.

After the State filed its notice of appeal, it moved to stay the preliminary injunction as to nonparties. DE33. The district court denied the motion. DE41 at 7. The State then moved both this Court and the U.S. Supreme Court to stay the injunction to the extent it applied to nonparties. Split panels of both courts denied the stays. DE26 (11th Cir.); *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1 (2023) (mem.). A divided merits panel of this Court affirmed the preliminary injunction. *HM Florida-ORL, LLC v. Gov'r of Fla.*, 137 F.4th 1207 (11th Cir. 2025). On June 3,

---

[3] Unless otherwise indicated, "DE__" refers to the docket entry number in the district court's record.

the State petitioned for rehearing or rehearing en banc. DE85 (11th Cir.). The mandate was then withheld. DE86 (11th Cir.).

Less than a month later, the Supreme Court issued *Trump v. CASA, Inc.*, 606 U.S. ___, 145 S. Ct. 2540 (June 27, 2025). After explaining that the Judiciary Act's grant of equitable authority empowered courts to administer only those remedies that courts of equity could provide at the founding, the Court conducted a historical analysis and determined that courts of equity in England and the United States had no practice of issuing universal injunctions in 1789. *Id.* at 2560. The Court clarified that authority was lacking not just for nationwide injunctions against federal statutes or executive orders, but also for statewide injunctions against state laws, like the one at issue in this case. *See id.* at 2548 n.1; *id.* at 2550 (noting two statewide injunctions, including the one here, as raising the question of whether federal courts can "universally enjoin the enforcement of a[] . . . legislative policy"); *id.* at 2552 (approving the party-specific relief in *Scott v. Donald*, 165 U.S. 107 (1897), involving a state law). Courts may in appropriate circumstances ensure that a party receives complete relief, but any benefit to nonparties must be incidental. *Id.* at 2557; *see also id.* at 2563 ("Courts . . . err insofar as they treat

complete relief as a mandate.") (Thomas, J., concurring, joined by Gorsuch, J.). Granting complete relief to a party cannot be a pretext for extending relief unnecessarily to nonparties. *Id.*

## STANDARD OF REVIEW

This Court may issue a stay pending appeal.[4] Fed. R. App. P. 8(a)(2). In analyzing a stay request, the Court considers: (1) whether the applicant has shown a strong likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties; and (4) the public interest. *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018); *see also Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2018) (applying same standard for a renewed motion to stay pending appeal). Because each factor favors the State with respect to nonparties, this Court should stay the district court's preliminary injunction insofar as it applies beyond HM.

---

[4] Because the mandate has been withheld, DE86 (11th Cir.), "[t]his [C]ourt retains jurisdiction over [the] appeal." *Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 645, 649 (11th Cir. 1990). Thus, "moving first in the district court would be impracticable." Fed. R. App. P. 8(a)(2)(A)(i).

# ARGUMENT

## I. The State is likely to succeed in narrowing the scope of the injunction to HM.

### A. *CASA* confirms that Congress has not given federal courts the power to grant universal relief.

A motions panel initially denied a stay. But after *CASA*, the State can easily show a "strong likelihood of success on the merits" of limiting the injunction to HM. In *CASA*, the Court confirmed what the State has argued throughout this case: "A universal injunction can be justified only as an exercise of equitable authority, yet Congress has granted federal courts no such power." *CASA*, 145 S. Ct. at 2550. *CASA* explains that "the equitable relief available in the federal courts is that 'traditionally accorded by courts of equity' at the time of our founding." *Id.* at 2560 (quoting *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). "Nothing like a universal injunction was available at the founding, or for that matter, for more than a century thereafter. Thus, under the Judiciary Act, federal courts lack authority to issue them." *Id.* at 2560.

*CASA* cites with approval cases in which the Court made clear the injunction of an overbroad municipal ordinance was limited "to the particular federal plaintiffs," *id.* at 2552 (quoting *Doran v. Salem Inn, Inc.*,

422 U.S. 922, 931 (1975)), and in which a plaintiff was denied an injunction barring enforcement of an unconstitutional state statute "against both himself and anyone else 'whose rights [were] infringed and threatened' by it," *id.* (quoting *Scott v. Donald*, 165 U.S. 107, 115 (1897)). After all, the Court explained, the problem with universal relief is not "*where* it applies, but *whom* it protects"; thus "the term 'universal' better captures" the problem than "nationwide." *Id.* at 2548 n.1. And while courts "may administer complete relief *between the parties*," any benefit to nonparties must be "merely incidental" to granting relief to the plaintiff. *Id.* at 2557. In other words, where the plaintiff's injuries stop, so does equitable authority.

In so declaring, the Supreme Court "put[] an end to the . . . practice of federal courts issuing universal injunctions." *Id.* at 2565 (Thomas, J., concurring). To grant the State's stay application, this Court need simply "heed [the Supreme] Court's guidance and cabin [its] grant[] of injunctive relief in light of historical equitable limits." *Id.*

**B. *CASA* provides no overbreadth exception to its prohibition on universal injunctions.**

HM will likely oppose a partial stay on the grounds that its overbreadth challenge makes this case different. *See* DE99 (11th Cir.) at 20–22. But *CASA* speaks of no such exceptions.

HM has claimed that "[i]t would defy logic to permit litigants to challenge a statute 'because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression,' but then limit relief exclusively to the parties before the court." *Id.* at 21. That misses the point. Overbreadth doctrine expands the range of substantive arguments that a plaintiff can raise on the merits, but it says nothing about the remedy to which a successful plaintiff is entitled if a court is convinced by the merits of the overbreadth argument. That latter question sounds in equity, and *CASA* makes clear that Congress has not granted courts sitting in equity the authority to award universal relief.

This distinction between merits and remedy is made clear by the Supreme Court's opinion in *United States v. National Treasury Employees Union* ("*NTEU*"), 513 U.S. 454 (1995), which concluded that the federal statute banning government employees from receiving honoraria

"violate[d] the First Amendment" because it was substantially overbroad as applied to "employees below grade GS-16." *Id.* at 472, 477. The Court still held that an injunction preventing enforcement of the overbroad statute "should be limited to the parties before the Court." *Id.* at 477. "[A]lthough the occasional case"—e.g., an overbreadth challenge—"requires us to entertain a facial challenge in order to vindicate *a party*'s right not to be bound by an unconstitutional statute"—i.e., to allow *that party* to invoke the rights of third parties to justify *that party's* relief— "we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants." *Id.* at 477–78 (emphasis added). *NTEU* thus makes explicit what centuries of historical practice confirm—even when a statute is unconstitutional on its face, equitable remedies are limited to the parties.

*CASA* drives home the point that "party-specific principles . . . permeate [the Supreme Court's] understanding of equity," 145 S. Ct. at 2552, including in overbreadth cases. In fact, for that very point *CASA* cited with approval *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), in which the Court held a statute overbroad but limited injunctive relief to the plaintiffs. In *Doran*, the Supreme Court affirmed the award of a

preliminary injunction preventing a New York town from enforcing an ordinance banning topless dancing against two of the three respondent corporations in the case. The Court found that the two corporations were likely to succeed on their claims that the ordinance was overbroad in its application both to establishments that served liquor and to establishments that did not. *Doran*, 422 U.S. at 932–33. But the Court reversed the award of a preliminary injunction preventing enforcement of the ordinance against the third respondent on grounds of *Younger* abstention, given that the third respondent was already being prosecuted in state court. *Id.* at 929. "Moreover," said the Court, "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute." *Id.* at 931.

In its opposition to rehearing, HM inferred that, because *CASA* did not mention an overbreadth exception, such an exception must exist. DE99 (11th Cir.) at 21. But *CASA* cited this very case—presenting a claim of overbreadth—in noting the need to address the propriety of universal relief. *CASA*, 145 S. Ct. at 2550. It did not suggest that this case

was in any way exceptional. Indeed, in writing for the *CASA* majority, Justice Barrett did not see fit even to reserve the question whether "doctrinal complexities" presented by a First Amendment overbreadth challenge, *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 2 (2023) (Kavanaugh, J., joined by Barrett, J.), might warrant an exception to the Court's categorical pronouncement: "A universal injunction can be justified only as an exercise of equitable authority, yet *Congress has granted federal courts no such power*." *CASA*, 145 S. Ct. at 2550 (emphasis added). By contrast, the Court went out of its way to reserve a number of other issues, such as "whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *Id.* at 2554 n.10.

Nor can HM rehash its reliance on overbreadth precedents like *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), or *FF Cosmetics Fl, Inc. v. City of Miami Beach*, 866 F.3d 1290 (11th Cir. 2017). DE99 (11th Cir.) at 21. As the State has pointed out before, none of these cases involved a challenge to the extra-party scope of the injunctions at issue. They were decided during the "several decades of tacit acquiescence in universal . . . remedies" that preceded the clarification provided by this Court in *Georgia v. President of the United States*, 46 F.4th 1283, 1306 (11th Cir. 2022),

and now the Supreme Court in *CASA*. *CASA* confirms that such cases are non-precedential. 145 S. Ct. at 2553 n.7 ("Like a 'drive-by-jurisdictional rulin[g],' implicit acquiescence to a broad remedy 'ha[s] no precedential effect.'"); *see also Rodgers v. Bryant*, 942 F.3d 451, 468 (8th Cir. 2019) (Stras, J., concurring in part and dissenting in part) ("[W]e have never held that a universal injunction is available by default to plaintiffs who are likely to prevail on a First Amendment challenge. . . . [E]ven if we have 'implicit[ly] resol[ved]' the issue before, it does not prevent us from reaching the right answer now.").

In the end, *CASA* makes clear that to obtain the broader relief sometimes previously awarded through universal injunctions, plaintiffs must seek class certification and meet the requirements of Federal Rule of Civil Procedure 23. *See* 145 S. Ct. at 2555–56 (criticizing universal injunctions as an impermissible "shortcut to relief"—"a class-action workaround"—that otherwise would be available only through Rule 23). HM has not done that here.

## II. The remaining stay factors favor the State.

The State will continue to suffer irreparable harm absent a partial stay. *CASA* holds that it "is enough to justify interim relief" when "a

universal injunction . . . improper[ly] . . . prevents the Government from enforcing its policies against nonparties." *Id.* at 2561. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Id.* at 2562 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)).

The "balance of harms" also favors a partial stay. *Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020). A partial stay will leave HM fully protected by the injunction. *See Georgia*, 46 F.4th at 1306 ("[A]n injunction that bars action against the plaintiffs obligates a defendant to respect that injunction[.]"). HM claims a right to admit children to its drag shows and says that the Act deters the exercise of this right. Dubious though that "right" may be, an injunction limited to HM will nevertheless allow HM to admit children without risk of prosecution under the Act while the injunction remains in force. A broader injunction conflicts with the Supreme Court's repeated admonition that "[i]injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*." *CASA*, 145 S. Ct. at 2557 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Here, "prohibiting enforcement

of the [Act] against [HM] will give [HM] complete relief." *Id*. "Extending the injunction to cover all other similarly situated [nonparties] would not render [HM's] relief any more complete." *Id*. at 2557–58.

HM nevertheless asserts that "[t]he chilling effect on the speech of third parties is undeniably a source of the injuries suffered by HM." DE99 (11th Cir.) at 22. But HM itself is under no threat of liability if its performers "are prosecuted under the Act for admitting a minor to another establishment." *Id*. HM perhaps means that its performers might be temporarily unavailable if they were to do double service as bouncers and then be prosecuted for admitting children to adult live performances at other establishments in the State. Yet this indirect and remote possibility can hardly be considered "substantial[] injur[y]" for purposes of weighing the balance of harms in the case. *Robinson v. Att'y Gen. of Ala.*, 957 F.3d 1171, 1176 (11th Cir. 2020).

Finally, the public interest will be served by demanding that nonparties avail themselves of the same tools as did HM if they too believe that the Act is unconstitutional and threatens harm to them. It will encourage multiple judges to weigh in only after careful deliberation, as opposed to engaging in the "'fast and furious' process of 'rushed, high-

stakes, [and] low-information' decisionmaking" that occurs when parties are litigating universal injunctions. *CASA*, 145 S. Ct. at 2559 (quoting *Labrador v. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring in grant of stay)). And it will prevent circumvention of the procedural limits in Rule 23, which is the device that Congress has authorized to allow relief for classes of similarly situated plaintiffs in a single proceeding. *Id.* at 2555–56.

## CONCLUSION

For the foregoing reasons, this Court should stay the injunction except as to Plaintiff-Appellee HM.

Respectfully submitted,

July 31, 2025

JAMES UTHMEIER
  *Attorney General*

  /s/ *Nathan A. Forrester*
JEFFREY PAUL DESOUSA
  *Acting Solicitor General*
NATHAN A. FORRESTER
  *Chief Deputy Solicitor General*
ALLEN L. HUANG
  *Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 414-2672 (fax)
nathan.forrester@myfloridalegal.com

*Counsel for Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE

1.     This document complies with Federal Rule of Appellate Procedure 27(d)(2)(A), because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,988 words.

2.     This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27, Federal Rule of Appellate Procedure 32(a)(5), and Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font using Microsoft Word.

*/s/ Nathan A. Forrester*
Chief Deputy Solicitor General

**CERTIFICATE OF SERVICE**

I certify that on July 31, 2025, I electronically filed this Renewed Motion for Stay Pending Appeal with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Allen L. Huang*
Deputy Solicitor General
