No. 23-12160

# In the United States Court of Appeals for the Eleventh Circuit

————————

HM Florida-Orl, LLC,

*Plaintiff-Appellee*,

v.

Secretary of the Florida Department of Business and Professional Regulation,

*Defendant-Appellant*.

————————

On Appeal from the United States District Court
for the Middle District of Florida
No. 6:23-cv-00950-GAP-LHP

————————

## En Banc Amicus Brief Brief Of Amicus Curiae America First Legal Foundation In Support Of The Defendant-Appellant Seeking Reversal

————————

Gene P. Hamilton
President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel of record certifies that the following persons and entities, in addition to those already listed in the parties' briefs, have an interest in the outcome of this case:

| Amicus Curiae | Counsel for Amicus Curiae |
|---|---|
| • America First Legal Foundation | Jonathan F. Mitchell<br>Gene P. Hamilton |

America First Legal Foundation is a not-for-profit corporation exempt from income tax under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). It does not have parent corporation, and no publicly held company has a 10 percent or greater ownership interest.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Amicus Curiae*

i

## TABLE OF CONTENTS

Certificate of interested persons and corporate disclosure statement ........................i

Table of contents ...............................................................................................ii

Table of authorities ..........................................................................................iii

Interest of amicus curiae .................................................................................. 1

Statement of compliance with Rule 29 .................................................................. 1

Summary of argument........................................................................................ 1

Argument .........................................................................................................3

    I.    Hamburger Mary's failed to make a "clear showing" that its injuries are "fairly traceable" to allegedly unlawful conduct of Secretary Griffin .......................................................................... 3

    II.    The en banc Court should address the merits even if it concludes that Hamburger Mary's failed to make a "clear showing" of Article III standing ......................................................11

    III.    The district court's overbreadth remedy was improper when as-applied relief would fully redress the plaintiff's alleged injury............13

    IV.    Hamburger Mary's must prove a "lopsided ratio" when comparing the unconstitutional and constitutional applications of SB 1438 ..........................................................................15

    V.    The district court improperly awarded a universal remedy ............... 16

    VI.    If the preliminary injunction is vacated, it will not immunize those who violated SB 1438 while the preliminary injunction was in effect ........................................................................... 18

    VII.    The Court should reiterate that a preliminary injunction may not issue unless the movant "clearly establishes" a likelihood of success on the merits ......................................................... 21

Conclusion .....................................................................................................24

Certificate of compliance ................................................................................. 25

Certificate of service .......................................................................................26

# Table of Authorities

**Cases**

*ACLU of Florida, Inc. v. Miami-Dade County School Board*,
557 F.3d 1177 (11th Cir. 2009)................................................................1, 2, 21

*All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*,
887 F.2d 1535 (11th Cir. 1989) ...................................................... 2, 21

*Board of Trustees of State University of New York v. Fox*,
492 U.S. 469 (1989)...................................................................... 13

*Boyle v. Landry*, 401 U.S. 77 (1971) ...................................................8

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) .............................................. 16

*Califano* v. *Yamasaki*, 442 U. S. 682 (1979) .............................................. 15

*California v. Texas*, 593 U.S. 659 (2021)...................................................4

*Camreta v. Greene*, 563 U.S. 692 (2011) ...................................................18

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ......................................6

*Collins v. Yellen*, 594 U.S. 220 (2021) .....................................................4

*Doe v. Pryor*, 344 F.3d 1282 (11th Cir. 2003) ...................................... 8, 10

*Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975)........................................... 17

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982).......................................3, 18, 20

*Ex Parte Young*, 209 U.S. 123 (1908)................................................... 2, 21

*Gonzales v. Carhart*, 550 U.S. 124 (2007) .......................................... 13, 15

*Hartnett v. Pennsylvania State Education Ass'n*,
963 F.3d 301 (3d Cir. 2020) .............................................................. 10

*HM Florida-ORL, LLC v. Governor of Florida*,
137 F.4th 1207 (11th Cir. 2025) .......................................... 9, 16, 21, 22, 23

*Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020) ...................9, 20

*Lake v. HealthAlliance Hospital Broadway Campus*,
738 F. Supp. 3d 208 (N.D.N.Y. 2024)........................................... 18, 20

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) (per curiam)................................1, 2, 21

*Miller v. Charlotte-Mecklenburg Schools Board of Education*,
  64 F.4th 569 (4th Cir. 2023) ........................................................................ 12

*Munaf v. Green*, 553 U.S. 674 (2008) ............................................................ 1

*Murthy v. Missouri*, 603 U.S. 43 (2024) ..................................................... 7, 8

*New Motor Vehicle Board of California v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977) .................................................................................. 23

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc) ................................ 5, 19

*Pittman v. Cole*, 267 F.3d 1269 (11th Cir. 2001) ................................................ 8

*Poe v. Ullman*, 367 U.S. 497 (1961) ......................................................... 8, 10

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) .................................... 11

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................................................... 6

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) .................... 11

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .................................. 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................... 4

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ............................................... 3, 17

*United States v. Hansen*, 599 U.S. 762 (2023) ....................................... 3, 5, 14, 15

*United States v. Jefferson County*, 720 F.2d 1511 (11th Cir. 1983) .................... 2, 21

*Village of Schaumburg v. Citizens for a Better Environment*,
  444 U.S. 620 (1980) .................................................................................. 14

*Whole Woman's Health v. Jackson*, 141 S. Ct. 2494 (2021) ......................... 5, 9, 19

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ............................... 5, 19

*Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) .................... 2, 21

**Statutes**

28 U.S.C. § 1292(a)(1) ............................................................................... 11

**Other Authorities**

David P. Currie, *The Three-Judge District Court in Constitutional
  Litigation*, 32 U. Chi. L. Rev. 1, 6 (1964) ............................................... 23

Adam Liptak, *Supreme Court Refuses to Revive Florida Law Restricting Drag Shows*, New York Times (November 16, 2023)............................................. 19

Ann E. Marimow, *Supreme Court Refuses to Reinstate Florida's Anti-Drag Show Law*, Washington Post (November 16, 2023)..................................... 19

Thomas W. Merrill, *Judicial Opinions as Binding Law and as Explanations for Judgments*, 15 Cardozo L. Rev. 43 (1993) ...................................20

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018) ....................................................................................20

Adrian Vermeule, *Saving Constructions*, 85 Geo. L.J. 1945 (1997) ..........................22

## INTEREST OF AMICUS CURIAE

Amicus curiae America First Legal Foundation is a nonprofit organization dedicated to promoting the rule of law and defending individual rights guaranteed under the Constitution. America First Legal has a substantial interest in this case because it believes that a proper understanding of constitutional rights must be informed by reference to their text, and that rights not expressly mentioned in the Constitution must be deeply rooted in this nation's history and tradition.

## STATEMENT OF COMPLIANCE WITH RULE 29

All parties have consented to the filing of this brief. No counsel for a party authored any part of this brief. And no one other than the amicus curiae, its members, or its counsel financed the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy,"[1] and it may not be granted unless the movant "clearly establishes the burden of persuasion as to the four requisites." *ACLU of Florida, Inc. v. Miami-Dade County School Board*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quoting *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)). The district court did not acknowledge or apply the "clear showing" requirement that the Supreme Court and the Eleventh Circuit

---

1. *Munaf v. Green*, 553 U.S. 674, 689 (2008) (citation omitted); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted).

consistently impose on litigants who seek preliminary injunctions. *See Mazurek*, 520 U.S. at 972 (1997) (per curiam) ("[A] preliminary injunction . . . should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original) (citation omitted)); *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008) ("[A] preliminary injunction . . . may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (citing *Mazurek*, 520 U.S. at 972)); *see also Ex parte Young*, 209 U.S. 123, 166 (1908) ("[N]o injunction ought to be granted unless in a case reasonably free from doubt."); *ACLU of Florida*, 557 F.3d at 1198; *All Care Nursing*, 887 F.2d at 1537; *United States v. Jefferson County*, 720 F.2d 1511, 1519 (11th Cir. 1983) ("The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." (citation omitted)).

And Hamburger Mary's came nowhere close to making a "clear showing" of likely success on the merits. It did not even allege (let alone show) that it faces a "credible threat of prosecution" from Secretary Griffin; it merely complained about the wording of the statute without ever tying its alleged injuries to the conduct of the defendant that it sued. It did not explain how it could be entitled to a facial overbreadth remedy when as-applied relief limited to Hamburger Mary's would fully redress the plaintiff's alleged injuries. And it did not show that the ratio of unlawful-to-lawful applications in SB 1438 is sufficiently "lopsided" to trigger application of the overbreadth doctrine, as required by the Supreme Court's decision in *United States v.*

*Hansen*, 599 U.S. 762, 770 (2023). The en banc Court should vacate the preliminary injunction and make clear that Secretary Griffin may enforce SB 1438 against any nonparty who violated the statute while the preliminary injunction was in effect. *See Edgar v. MITE Corp.*, 457 U.S. 624, 648–53 (1982) (Stevens, J., concurring in part and concurring in the judgment). The Court should also rebuke the district court and the panel for issuing a "universal" remedy when an injunction limited to Hamburger Mary's would have fully redressed the plaintiff's Article III injuries. *See Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025) ("[T]he universal injunction . . . falls outside the bounds of a federal court's equitable authority under the Judiciary Act.").

## ARGUMENT

### I.  HAMBURGER MARY'S FAILED TO MAKE A "CLEAR SHOWING" THAT ITS INJURIES ARE "FAIRLY TRACEABLE" TO ALLEGEDLY UNLAWFUL CONDUCT OF SECRETARY GRIFFIN

The Secretary's brief explains many of the errors in the district court's and the panel opinion's Article III standing analysis. *See* Appellant's Initial Br. Reh'g En Banc, ECF No. 112, at 11–15. But there is a more serious problem with the plaintiff's Article III standing. Neither the plaintiff nor the district court has ever explained how Hamburger Mary's supposed injuries are "fairly traceable" to the allegedly unlawful *conduct* of Secretary Griffin. Instead, the district court thought that it could establish Article III standing by declaring that Hamburger Mary's injuries are "fairly traceable" to "the operation of the Act"—rather than the *conduct* of the defendant that it seeks to

enjoin. *See* R.30, at 14 ("Plaintiff's injury is fairly traceable *to the operation of the Act*" (emphasis added)).

The district court's analysis flouts *California v. Texas*, 593 U.S. 659 (2021), and misunderstands the nature of judicial review. Litigants in federal court do not "challenge" statutes. They challenge the *conduct* of the defendants that they have sued. So a plaintiff must allege and prove an injury that is "fairly traceable" to "allegedly unlawful *conduct*" of the named *defendant*; it is not enough to assert an injury caused by the existence or "operation" of an allegedly unlawful statute. *See California*, 593 U.S. at 668–69 ("A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006))); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("If the plaintiff does not claim to have suffered an injury *that the defendant caused* and the court can remedy, there is no case or controversy for the federal court to resolve." (emphasis added) (citation and internal quotation marks omitted)).

The Supreme Court has made this clear time and time again. In *Collins v. Yellen*, 594 U.S. 220 (2021), for example, the Court wrote:

> [F]or purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to "allegedly unlawful conduct" of the defendant, *not to the provision of law that is challenged*.

*Id.* at 243 (emphasis added) (citation omitted). And the Supreme Court has repeatedly stated that the federal judiciary cannot issue remedies that operate

on a statute; it can redress only the unlawful *actions* of litigants before the court. *See Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (*Whole Woman's Health I*) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021) (*Whole Woman's Health II*) ("[N]o court may . . . purport to enjoin challenged laws themselves" (citation and internal quotation marks omitted)); *see also Okpalobi v. Foster*, 244 F.3d 405, 426 n.34 (5th Cir. 2001) (en banc) ("An injunction enjoins a defendant, not a statute.").

All of this remains true when a plaintiff asserts a First Amendment overbreadth claim, as the rules of Article III standing are constitutionally mandated and cannot be subject to exceptions designed to accommodate the policy considerations that undergird the overbreadth doctrine. *See Hansen*, 599 U.S. at 769 (describing how overbreadth departs from the ordinary rules governing facial challenges and third-party standing, which the Court justifies on the ground that it "provides breathing room for free expression."). So Hamburger Mary's needed to allege and show that its Article III injuries are "fairly traceable" to allegedly unlawful conduct of Secretary Griffin. And in a pre-enforcement lawsuit, that means Hamburger Mary's needs to allege and show a "credible threat of prosecution" from Secretary Griffin—the officer that it is suing and seeking to enjoin. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (allowing pre-enforcement litigation to proceed under Article III only when the plaintiff alleges and proves "'an intention to

engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, *and there exists a credible threat of prosecution thereunder*.'" (emphasis added) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979))).

The complaint does not allege a "credible threat of prosecution" from Secretary Griffin or anyone else, and it does not even attempt to explain how *any* components of the Article III standing test have been met. *See* R.1, at 1–21 (no discussion or allegations of Article III standing). That alone required dismissal of the complaint, as complaints must "clearly allege facts" that "demonstrate" each element of the Article III standing inquiry. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of Article III standing]." (second alteration in original) (citation omitted)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm.").

The complaint also says that Hamburger Mary's has no intent or desire to expose children to obscene or inappropriate performances. R.1, at ¶ 12 ("There is no lewd activity, sexually explicit shows, disorderly conduct, public exposure, obscene exhibition, or anything inappropriate for a child to see."); *id.* at ¶ 48 (insisting that whenever the "entertainment is not suitable for children, children are not allowed to attend and the venue announces this in advance on their website and in their advertising."). So the complaint must

6

explain *how* Hamburger Mary's is facing a "credible threat of prosecution" under SB 1438—and how those threats are "fairly traceable" to allegedly unlawful conduct of Secretary Griffin—before this lawsuit can proceed past the motion-to-dismiss stage.

And to justify a preliminary injunction, the plaintiff and the district court needed to make a "clear showing"[2] that Hamburger Mary's is facing a "credible threat of prosecution" from Secretary Griffin. *See Murthy v. Missouri*, 603 U.S. 43, 58 (2024) ("At the preliminary injunction stage, . . . the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." (quoting *Winter*, 555 U.S. at 22)). Yet the plaintiff's motion for preliminary injunction does not even assert—let alone make a "clear showing"—that it faces a "credible threat of prosecution" from Secretary Griffin or anyone else. Its discussion of standing complains only about the *statute*, rather than the conduct of Secretary Griffin,[3] and it presents no evidence or reason to believe that Secretary Griffin is threatening to enforce SB 1438 against Hamburger Mary's. R.6 at 21 ("The fact that the statutes are both vague and overly-broad indicates that Plaintiff has suffered an actual, concrete, and particularized injury in that it has a reasonable fear of prosecution for conducting shows similar to those it has performed in the past"). But pointing out that a *statute's* language is "vague" or "overbroad" does not show that *state officials* are threatening to enforce that statute against the

---

2.   *See supra* note 1 and accompanying text.

3.   R.6 at 20–21; R.28 at 3–5.

plaintiff's activities—especially when the plaintiff is insisting that it does not allow children to attend performances that are obscene or age-inappropriate. *See Pittman v. Cole*, 267 F.3d 1269, 1283–84 (11th Cir. 2001) ("[F]or a plaintiff alleging that his speech was chilled to have standing, he or she must show 'that either (1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution.'" (citation omitted)). And courts routinely dismiss pre-enforcement lawsuits when the plaintiff fails to demonstrate a credible threat of enforcement—even when the statutory language arguably or unquestionably covers the plaintiff's activities. *See, e.g.*, *Boyle v. Landry*, 401 U.S. 77, 81 (1971) ("[T]he complaint contains no mention of any specific threat by any officer or official of Chicago, Cook County, or the State of Illinois to arrest or prosecute any one or more of the plaintiffs under that statute either one time or many times."); *see also Poe v. Ullman*, 367 U.S. 497, 501 (1961) (plurality opinion); *Doe v. Pryor*, 344 F.3d 1282, 1287–88 (11th Cir. 2003).

The district court's analysis of traceability and redressability is even worse. It relies on the plaintiff's allegations rather than demanding a "clear showing" of Article III standing,[4] which is acceptable for resolving the motion to dismiss but insufficient to support the issuance of a preliminary injunction. *See Murthy*, 603 U.S. at 58. The district court never even *claims* that

---

4.    R.30 at 14 ("Plaintiff has *sufficiently alleged in its Complaint that* the Act . . . at least arguably creates a substantial risk to its licenses due to its vague and overbroad language." (emphasis added)).

the plaintiff is facing a "credible threat of prosecution" from Secretary Griffin or any other state official, nor does it explain how the plaintiff made a "clear showing" to that effect. R.30 at 10–14. And the district court tries to establish "redressability" by pretending that judicial remedies can formally revoke enacted statutory language. *Id.* at 14 ("'[A]s for the redressability prong, *if the challenged rules are stricken as unconstitutional*, [Plaintiff] simply need not contend with them any longer.' Therefore, Plaintiff has Article III standing to pursue its claim." (second alteration in original) (emphasis added) (citation omitted) (quoting *Harrell v. The Florida Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010)). But courts do not "strike" statutes when declaring them unconstitutional; they merely enjoin defendants from enforcing them. *See Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Jacobson v. Florida Secretary of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) ("[F]ederal courts have no authority to erase a duly enacted law from the statute books." (citation and internal quotation marks omitted)). The district court needed to explain how an injunction that restrains Secretary Griffin will redress the plaintiff's injuries—and it cannot do that without evidence of a "credible threat of prosecution" from Secretary Griffin.[5]

---

5.  The panel opinion, to its credit, acknowledged the need to trace Hamburger Mary's injuries to the *conduct* of Secretary Griffin rather than the mere existence of an allegedly unconstitutional statute. *See HM Florida-ORL, LLC v. Governor of Florida*, 137 F.4th 1207, 1221–22 (11th Cir. 2025) ("Hamburger Mary's must show that its asserted injury is tracea-

* * *

The plaintiff and the district court needed to show that *Secretary Griffin* is inflicting Article III injury by credibly threatening prosecution. They do not carry their burden by tracing the plaintiff's Article III injuries to the mere *existence* of the disputed statutory provisions.

---

ble to Griffin's conduct, not just the Act in the abstract."). But it claimed that Hamburger Mary's had satisfied the traceability requirement of Article III standing doctrine merely by showing that Secretary Griffin has "authority" to enforce SB 1438. *See id.* at 1222 ("[W]hen a plaintiff's asserted injury flows from steps it takes to comply with a law, that injury is generally traceable to government officials with the authority to enforce that law. . . . [T]he Act's text unambiguously reveals that the Secretary is the proper defendant for this suit because portions of the Act's enforcement proceed under her authority."). That is a non sequitur. State officials who have authority to enforce an allegedly unconstitutional statute cannot be sued if they have no intention of enforcing that law against the named plaintiffs. *See Poe v. Ullman*, 367 U.S. 497 (1961); *Doe v. Pryor*, 344 F.3d 1282, 1287–88 (11th Cir. 2003) ("Because there is no credible threat of enforcement of [the Alabama statute], the plaintiffs have no standing to challenge that statute on First Amendment grounds."); *Hartnett v. Pennsylvania State Education Ass'n*, 963 F.3d 301, 309 (3d Cir. 2020) ("[U]ntil a party faces a real threat of enforcement, a statute is mere words on a page, and federal courts cannot opine on its validity."). Secretary Griffin's authority to enforce SB 1438 is a *necessary* condition for Article III standing, but it is not a *sufficient* condition, as the panel opinion held. Hamburger Mary's must plead and prove that Secretary Griffin intends to enforce SB 1438 against it absent judicial intervention, and it has made no attempt to do so.

10

## II. The En Banc Court Should Address The Merits Even If It Concludes That Hamburger Mary's Failed To Make A "Clear Showing" Of Article III Standing

If the en banc Court concludes that the plaintiff failed to make a "clear showing" of Article III standing, then it should also consider the merits and reverse the district court on the additional grounds that the statute is not overbroad and that the plaintiff was not entitled to a universal remedy. Although federal courts are forbidden to "hypothesize subject-matter jurisdiction for the purpose of deciding the merits,"[6] this Court would not violate the ban on hypothetical jurisdiction if it rejects the district court's merits analysis after holding that the plaintiff failed to make a "clear showing" of standing at the preliminary-injunction stage. The jurisdiction of *this* Court to review the preliminary-injunction order is entirely secure, as it rests on 28 U.S.C. § 1292(a)(1).[7] And the plaintiff's failure to make a "clear showing" of

---

6. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998).

7. Secretary Griffin's en banc brief claims that *this* Court would lack jurisdiction over the *appeal* if it concludes that Hamburger Mary's fails to satisfy the requirements of Article III standing. *See* Appellant's Initial Br. Reh'g En Banc, ECF No. 112, at xii ("Were it not for HM's lack of Article III standing, addressed in Part I below, this Court would have jurisdiction over the appeal under 28 U.S.C. § 1292(a)(1)."). That is incorrect. All that is needed to secure this Court's appellate jurisdiction under 28 U.S.C. § 1292(a)(1) is an order of a district court granting an injunction; it does not matter for purposes of *appellate* jurisdiction whether the *district court* had subject-matter jurisdiction over the case. An appellate court does not lose jurisdiction to rule on an appeal whenever it concludes that the district court lacked subject-matter jurisdiction under

subject-matter jurisdiction at the preliminary-injunction stage does not mean that the federal judiciary conclusively lacks jurisdiction to consider the merits. The "clear showing" inquiry at the preliminary-injunction stage is a merely a tentative assessment of whether the plaintiff is likely to succeed in establishing Article III standing; it is not a final determination on whether the federal judiciary has subject-matter jurisdiction over the litigation. So there is nothing wrong with a ruling from this Court that vacates the preliminary injunction on separate and independent grounds, holding that Hamburger Mary's failed to make a "clear showing" of likely success on Article III standing, and holding in the alternative that Hamburger Mary's also failed to make a "clear showing" of likely success on the merits.

There are also compelling reasons for the en banc Court to address the merits, even though it is not required to do so if it concludes that the plaintiff failed to make a "clear showing" of Article III standing. It would further judicial economy for the en banc Court to resolve the substantive and remedial issues now, because a future plaintiff might establish standing with a better developed factual record. That plaintiff could then ask for a facial or universal remedy, and the issues will be back before this Court even though they have already been briefed and argued in this appeal. The en banc Court should also rule on the merits to provide much needed guidance and assur-

---

Article III. *See Miller v. Charlotte-Mecklenburg Schools Board of Education*, 64 F.4th 569, 573–74 (4th Cir. 2023) ("Whether the district court had original subject matter jurisdiction and whether this Court has appellate jurisdiction are distinct questions.").

12

ance to state legislatures that might consider laws similar to SB 1438. It is crucial for legislators within this circuit to know whether these laws are constitutional or, if they are constitutionally problematic, what needs to be done to fix them.

### III. The District Court's Overbreadth Remedy Was Improper When As-Applied Relief Would Fully Redress The Plaintiff's Alleged Injury

Courts should not issue overbreadth remedies when as-applied relief can fully redress the plaintiff's alleged injuries. The Supreme Court so held in *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469 (1989):

> It is not the usual judicial practice, however, nor do we consider it generally desirable, to proceed to an overbreadth issue unnecessarily—that is, before it is determined that the statute would be valid as applied. . . . [F]or reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first.

*Id.* at 484–85. If a litigant asserting an overbreadth claim insists that its speech or conduct is *protected* by the First Amendment, then the Court should award as-applied relief that shields the plaintiff's constitutionally protected activities rather than nixing the statute's enforcement across the board. *See Gonzales v. Carhart*, 550 U.S. 124, 168 (2007) ("[A]s-applied challenges are the basic building blocks of constitutional adjudication." (citation omitted)). Overbreadth remedies should be considered *only* when a litigant's conduct is *unprotected* by the First Amendment, because as-applied relief cannot be used to restrain government officials from enforcing a statute

13

against constitutionally unprotected conduct. *See Hansen*, 599 U.S. at 769 (considering overbreadth claim raised by litigant who conceded that his speech was constitutionally unprotected); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 634 (1980) (overbreadth doctrine allows "a litigant whose own activities are unprotected" to "nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court.").

Neither the district court nor the panel opinion cited *Fox* or acknowledged its existence, even though it was cited repeatedly and heavily relied upon in the briefing. *See* Appellant's Initial Br., ECF No. 30, at 48, 51; Amicus Curiae AFL Supp. Appellant, ECF No. 33, at 11–13; Appellee's Resp. Br., ECF No. 39, at 44–45; Appellant's Reply Br., ECF No. 49, at 29–30. But *Fox* makes short work of the plaintiff's overbreadth claim. Hamburger Mary's is not alleging that its performances are unprotected by the First Amendment; to the contrary, it insists that its drag shows are constitutionally protected speech and expression. R.1 at ¶ 39 (criticizing the statute for having "a chilling effect on protected speech"); *id.* at ¶ 42 (same); *id.* at ¶ 50 ("[T]he State seeks to explicitly restrict or chill speech and expression protected by the First Amendment"); R.6 at ¶ 47 (same). The district court agreed and criticized SB 1438 for causing Hamburger Mary's to "chill" its practice of hosting these supposedly constitutionally protected performances. R.30 at 12. So the district court (at most) should have issued an as-applied remedy that restrains Secretary Griffin from enforcing SB 1438 against Ham-

14

burger Mary's. Courts have no business issuing an "overbreadth" remedy when an as-applied remedy is adequate for the job. *See Califano* v. *Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*" (emphasis added)); *Gonzales*, 550 U.S. at 168 ("[A]s-applied challenges are the basic building blocks of constitutional adjudication." (citation and internal quotation marks omitted)). The en banc Court should so hold.

## IV. HAMBURGER MARY'S MUST PROVE A "LOPSIDED RATIO" WHEN COMPARING THE UNCONSTITUTIONAL AND CONSTITUTIONAL APPLICATIONS OF SB 1438

*United States v. Hansen*, 599 U.S. 762 (2023), requires litigants seeking overbreadth remedies to prove a "lopsided ratio" when comparing a law's "unconstitutional applications" to the statute's "lawful sweep":

> Because it destroys some good along with the bad, invalidation for overbreadth is strong medicine that is not to be casually employed. To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. *In the absence of a lopsided ratio*, courts must handle unconstitutional applications as they usually do—case-by-case.

*Id*. at 770 (emphasis added) (cleaned up); *see also id*. at 784 ("[T]he ratio of unlawful-to-lawful applications is *not lopsided enough* to justify the 'strong medicine' of facial invalidation for overbreadth." (emphasis added) (citation omitted)). Hamburger Mary's failed to make a "clear showing" of a "lopsided ratio" when comparing the supposedly unconstitutional applications of SB 1438 to its legitimate sweep, and the district court made no such finding.

The district court can perhaps be forgiven for ignoring the "lopsided ratio" requirement because *Hansen* was decided on June 23, 2023—only one day before the district court issued its preliminary injunction on June 24, 2023—and nothing in the docket sheet indicates that the parties brought *Hansen* to the district court's attention. But the district court has no excuse for its failure to demand a showing of "substantial" overbreadth, or for the absence of any finding or determination that the supposedly unconstitutional applications of SB 1438 were "substantial" when "judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Litigants in overbreadth challenges have long been required to make that showing, even before *Hansen*, yet the district court pronounced the statute overbroad without even attempting to compare the allegedly unconstitutional applications of the law to its "plainly legitimate sweep."

## V. THE DISTRICT COURT IMPROPERLY AWARDED A UNIVERSAL REMEDY

The district court and the panel opinion issued a "universal" remedy that enjoins Secretary Griffin from enforcing SB 1438 against anyone—even though Hamburger Mary's did not sue as a class representative, and even though it is undisputed that an injunction limited to Hamburger Mary's will fully redress the plaintiff's Article III injuries. This was error for the reasons explained in Secretary Griffin's en banc brief and Judge Tjoflat's dissent from the panel opinion. *See* Appellant's Initial Br. Reh'g En Banc, ECF No. 112, at 40–46; 137 F.4th at 1266–68 & nn.8–9 (Tjoflat, J., dissenting); *see also*

16

*Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025) ("[T]he universal injunction . . . falls outside the bounds of a federal court's equitable authority under the Judiciary Act.").

We have only one point to add to Secretary Griffin's and Judge Tjoflat's discussion. Hamburger Mary's lacks Article III standing to seek a remedy that restrains SB 1438's enforcement against others. Hamburger Mary's has not alleged that it will suffer Article III injury if the statute is enforced against anyone else. (If anything, Hamburger Mary's is likely to *benefit* from the enforcement of SB 1438 against its competitors.) And Hamburger Mary's is not suing as a representative of others who are suffering injury from the statewide enforcement of SB 1438. Nor has Hamburger Mary's alleged or shown that a universal remedy is needed to redress its injuries. So the panel's universal remedy not only contravenes the Supreme Court's remedial doctrines,[8] it also violates the rules of Article III standing by allowing Hamburger Mary's to sue to enjoin enforcement actions that do not injure or affect it in the slightest.

---

8.  *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[N]either declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute."); *CASA*, 606 U.S. at 850 ("[U]niversal injunctions are a class-action workaround.").

## VI. If The Preliminary Injunction Is Vacated, It Will Not Immunize Those Who Violated SB 1438 While The Preliminary Injunction Was In Effect

If this Court vacates or reverses the preliminary injunction, it should make clear that Secretary Griffin (and others) may enforce SB 1438 against anyone who violated the statute while the preliminary injunction was in effect. A federal district court's opinions or injunctions have no precedential effect in other court proceedings,[9] and a *vacated* preliminary injunction provides no shield to those who chose to violate a statute in reliance on that erroneous and now-repudiated ruling. *See Edgar v. MITE Corp.*, 457 U.S. 624, 651–52 (1982) (Stevens, J., concurring in part and concurring in the judgment) ("Since a final judgment declaring a state statute unconstitutional would not grant immunity for actions taken in reliance on the court's decision, certainly a preliminary injunction—which on its face does nothing more than temporarily restrain conduct—should not accomplish that result. Neither the preliminary injunction nor the subsequent judgment declaring the statute unconstitutional can fairly be construed as a grant of absolute immunity from enforcement of the Illinois statute."); *Lake v. HealthAlliance Hospital Broadway Campus*, 738 F. Supp. 3d 208, 220 n.14 (N.D.N.Y. 2024) ("[I]f an

---

9.    *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)).

injunction is dissolved the State may enforce the statute against violators for conduct that occurred while the injunction was in place.").

A preliminary injunction does not enjoin the disputed statute; it merely tells the enjoined official not to initiate enforcement proceedings while the injunction remains in effect. *See Whole Woman's Health I*, 141 S. Ct. at 2495 ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves."); *Whole Woman's Health II*, 595 U.S. at 44 ("[N]o court may . . . purport to enjoin challenged laws themselves" (citations and internal quotation marks omitted)); *Okpalobi*, 244 F.3d at 426 n.34 ("An injunction enjoins a defendant, not a statute."). But that hasn't stopped the media from reporting that the district court's preliminary injunction "blocked" the underlying statute, implying that SB 1438 is formally suspended and that anyone can flout the law without consequence—even if the preliminary injunction winds up getting narrowed or vacated on appeal. *See* Adam Liptak, *Supreme Court Refuses to Revive Florida Law Restricting Drag Shows*, New York Times (November 16, 2023), available at https://nyti.ms/3Glewgu (reporting that the district court "issu[ed] a preliminary injunction blocking the law throughout the state"); Ann E. Marimow, *Supreme Court Refuses to Reinstate Florida's Anti-Drag Show Law*, Washington Post (November 16, 2023), available at https://wapo.st/4a2mAAs (reporting that the district court's preliminary injunction "blocked the law statewide"). And the panel opinion does nothing to dispel this commonly held misunderstanding of preliminary injunctions.

19

SB 1438 remains on the books and continues to exist as the law of Florida. *See Jacobson*, 974 F.3d at 1255 ("[F]ederal courts have no authority to erase a duly enacted law from the statute books." (citation and internal quotation marks omitted)); Thomas W. Merrill, *Judicial Opinions as Binding Law and as Explanations for Judgments*, 15 Cardozo L. Rev. 43, 64 (1993) ("[J]udicial opinions do not result in any change in the codification of enacted law. . . . [S]tatutory provisions that have been declared unconstitutional remain part of the code unless or until repealed by the legislature."). The preliminary injunction is nothing more than a temporary non-enforcement policy imposed on defendant Griffin, which leaves lawbreakers subject to fines and loss of licenses if the judgment is eventually vacated or reversed on appeal. *See* Merrill, *supra*, at 64 ("[I]f a provision is not repealed by the legislature, and the court later changes its mind about the meaning of the Constitution, the provision in question becomes again as fully effective and enforceable in court as if it had never been questioned."); *see also* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 938–42, 986–1000 (2018). The federal judiciary has no authority to confer preemptive pardons on those who knowingly violate statutes in reliance on court decisions that wrongly declare laws unconstitutional or wrongly enjoin their enforcement. *See Edgar*, 457 U.S. at 653 (Stevens, J., concurring in part and concurring in the judgment) ("There simply is no constitutional or statutory authority that permits a federal judge to grant dispensation from a valid state law."); *Lake*, 738 F. Supp. 3d at 220 n.14.

## VII. The Court Should Reiterate That A Preliminary Injunction May Not Issue Unless The Movant "Clearly Establishes" A Likelihood Of Success On The Merits

A preliminary injunction is "an extraordinary and drastic remedy,"[10] and it may not issue unless the movant "clearly establishes the burden of persuasion as to the four requisites." *ACLU of Florida*, 557 F.3d at 1198 (quoting *All Care Nursing Service*, 887 F.2d at 1537). The Supreme Court and the Eleventh Circuit have said this many times,[11] and even the panel opinion acknowledged that the plaintiffs must make a "clear showing" of likely success, at least with respect to Article III standing. *See* 137 F.4th at 1215 ("[A]t the preliminary injunction stage . . . the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing." (second alteration in original) (quoting *Murthy*, 603 U.S. at 58)).

Unfortunately, the panel opinion paid only lip service to the "clear showing" requirement, as it affirmed a preliminary injunction that rests on legal

---

10. *See* cases cited *supra* note 1.

11. *See Mazurek*, 520 U.S. at 972 ("[A] preliminary injunction . . . should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." (emphasis in original)); *Winter*, 555 U.S. at 22 ("[A] preliminary injunction . . . may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (citing *Mazurek*, 520 U.S. at 972)); *see also Ex parte Young*, 209 U.S. 123, 166 (1908) ("[N]o injunction ought to be granted unless in a case reasonably free from doubt."); *ACLU of Florida*, 557 F.3d at 1198; *All Care Nursing*, 887 F.2d at 1537; *Jefferson County*, 720 F.2d at 1519 ("The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." (citation omitted)).

contentions that are (at best) debatable and controversial. Even if one ultimately agrees with the panel majority's analysis, it cannot possibly be said that Hamburger Mary's "clearly established" that it would likely succeed on its demands for a facial overbreadth remedy that blocks SB 1438's enforcement against anyone. The panel majority's argument rests on several highly contestable assertions, including: (1) Its insistence that the phrase "lewd conduct" should be construed to reach constitutionally protected speech and expression, in violation of the constitutional-avoidance canon;[12] (2) Its decision to exclude the undeniably constitutional applications of SB 1438's "lewd conduct" provision from the overbreadth calculation, on the ground that these are separately and independently covered by other provisions in the Act;[13] (3) Its conclusion that the age-variable obscenity standard is unconstitutionally vague and overbroad;[14] (4) The idea that Hamburger Mary's is entitled to a "facial" overbreadth remedy when Hamburger Mary's insists that its drag shows are constitutionally protected expression and when as-applied relief limited to Hamburger Mary's conduct is all that is needed to fully re-

12. *See* 137 F.4th at 1232–33; Appellant's Initial Br. Reh'g En Banc, ECF No. 112, at 10, 30; *see also Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 514 (1990) ("[W]here fairly possible, courts should construe a [state] statute to avoid a danger of unconstitutionality." (citation and internal quotation marks omitted)); Adrian Vermeule, *Saving Constructions*, 85 Geo. L.J. 1945 (1997).

13. *See* 137 F.4th at 1238–39; *id*. at 1246 n.17; Appellant's Initial Br. Reh'g En Banc, ECF No. 112, at 31.

14. *See* 137 F.4th at 1239–45; Appellant's Initial Br. Reh'g En Banc, ECF No. 112, at 32.

22

dress the plaintiff's Article III injuries;[15] and (5) The idea that Hamburger Mary's is entitled to a universal remedy that blocks SB 1438's enforcement against anyone when it has not sued as a class representative.[16] This is not the stuff of which a "clear showing" of likely success is made, even if one believes or hopes that the courts will ultimately adopt the panel majority's aggressive interpretations of existing doctrines.

It is unacceptable that Florida's duly enacted law has been thwarted by a preliminary injunction in the absence of a "clear showing" that the law is facially unconstitutional. *See generally* David P. Currie, *The Three-Judge District Court in Constitutional Litigation*, 32 U. Chi. L. Rev. 1, 6 (1964) (noting that "[r]eversal of an erroneous injunction is often little solace to the victim; in the interval, irreparable damage may have been done"); *New Motor Vehicle Board of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The Supreme Court's repeated pronouncements that preliminary injunctions may not issue absent a "clear showing" of likely success on the merits have failed to penetrate the consciousness of district judges (and members of this Court) who casually enjoin enforcement of a state's

---

15. *See* 137 F.4th at 1247–48; Appellant's Initial Br. Reh'g En Banc, ECF No. 112, at 22–23.

16. *See* 137 F.4th at 1245–47; Appellant's Initial Br. Reh'g En Banc, ECF No. 112, at 40–46.

23

laws on far less than the required "clear showing" of invalidity. The en banc Court should deliver a more emphatic statement that preliminary injunctions—especially those that enjoin the enforcement of a State's duly enacted laws—are not to issue absent a "clear showing" of likely success on the merits.

## Conclusion

The preliminary injunction should be vacated.

Respectfully submitted.

<div style="float:right">

 /s/ Jonathan F. Mitchell
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

</div>

Gene P. Hamilton
President and General Counsel
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721 (phone)
gene.hamilton@aflegal.org

Dated: March 3, 2026

*Counsel for Amicus Curiae*

24

# CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 6,260 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
Dated: March 3, 2026                    *Counsel for Amicus Curiae*

25

## Certificate Of Service

I certify that on March 3, 2026, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Eleventh Circuit and served through CM/ECF upon all counsel of record in this case.

<u>/s/ Jonathan F. Mitchell</u>
Jonathan F. Mitchell
*Counsel for Amicus Curiae*